Marvin A. RENTMEESTER and Myrtle J. Rentmeester, his wife, Plaintiffs-Respondents,

v.

WISCONSIN LAWYERS MUTUAL INSURANCE COMPANY, Defendant-Respondent-Cross-Respondent,

William HINKFUSS, Defendant-Third-Party Plaintiff-Respondent-Cross-Appellant,

v.

CONTINENTAL CASUALTY COMPANY, Third-Party Defendant-Appellant.†

Court of Appeals

*No. 90–2443. Submitted on briefs June 28, 1991.—Decided July 23, 1991.*

(Also reported in 473 N.W.2d 160.)

†Petition to review denied.

1

On behalf of the third-party defendant-appellant, the cause was submitted on the briefs of *Jerome E. Smyth* and *Jon M. Counsell, Liebmann, Conway, Olejniczak & Jerry, S.C.,* of Green Bay.

On behalf of the defendant-third-party plaintiff-respondent-cross-appellant, the cause was submitted on the brief of *Thomas L. Schober* and *Dean R. Rohde, Schober & Ulatowski, S.C.,* of Green Bay.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Nila Jean Robinson* and *Avram D. Berk, Robinson, Robinson, Peterson, Berk & Cross,* of Appleton.

On behalf of the defendant-respondent-cross-respondent, the cause was submitted on the briefs of *William W. Ehrke, Quale, Feldbruegge, Calvelli, Thom & Croke, S.C.,* of Milwaukee.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  Continental Casualty Company (CNA) appeals a judgment requiring CNA to defend and to provide coverage to attorney William Hinkfuss in Marvin and Myrtle Rentmeesters' legal malpractice action against Hinkfuss. CNA contends that because the Rentmeesters made no claim during the CNA policy period as required by its claims made policy, it owes no duty to defend or provide coverage to Hinkfuss. Alternatively, CNA contends that coverage should be denied

because it did not receive timely notice of the claim and was prejudiced by the failure to receive timely notice. Because a claim was made during the policy period and because CNA was not prejudiced by any notice deficiencies, we affirm.[1]

In 1979, the Rentmeesters sold property to Michael and Myrna Lane, and Hinkfuss drafted and recorded the land contract for the Rentmeesters. Five years later, a dispute arose between the Rentmeesters and the Lanes concerning the land contract. The Rentmeesters contended that the land contract failed to embody the parties' agreement. The trial court ruled that the land contract as originally recorded governed the sale and rendered a decision adverse to the Rentmeesters.

Attorney Winston Ostrow represented the Rentmeesters in the Lanes' action against them. Following the adverse decision, Ostrow wrote to Hinkfuss. The letter, dated August 12, 1986, included the following statement:

> The Rentmeesters intend to appeal. While we disagree with the factual determinations made by the Trial Court, we don't see much chance of success on an appeal because of the applicable standard of review. . . .
>
> I am reluctant and embarrassed to address the next matter. . . . However under the circumstances, the Rentmeesters have asked us to ask you to notify your professional insurance carrier of this matter. We

---

[1]Hinkfuss cross-appeals that part of the judgment dismissing Wisconsin Lawyers Mutual Insurance Company (WLMIC) from the action. Hinkfuss asks us to find that WLMIC provides coverage if we reverse the trial court because WLMIC provided Hinkfuss with insurance from July 1, 1987, to June 30, 1988. Because we affirm the trial court we need not reach that issue and dismiss the cross-appeal.

would ask that a representative of your carrier contact the undersigned [Winston A. Ostrow]. Again, because of my personal feelings for you and my general distaste for professional malpractice claims, I am reluctant in conveying this; but I believe it is necessary under the circumstances.

In response to this letter, Hinkfuss wrote back to Ostrow. That letter contained the following:

Please be advised that the [trial court] Decision and the potential claim will be forwarded to my insurance carrier. I hope the appeal does work out . . ..

Hinkfuss, however, did not forward the decision and potential claim.

After losing on appeal, the Rentmeesters commenced an action against Hinkfuss alleging that Hinkfuss had negligently drafted and recorded the land contract in 1979. Hinkfuss, as third-party plaintiff, brought an action against CNA alleging that CNA owed him a duty to defend and to provide coverage on the Rentmeester claim because CNA provided "claims made" malpractice insurance coverage to Hinkfuss from July 1, 1986, through July 1, 1987.[2]

We first note what facts are not disputed. The parties do not dispute that Ostrow sent the letter to Hinkfuss during the CNA policy period. Nor do the parties contest that Hinkfuss did not contact CNA upon receipt of the letter. Finally, the parties agree that the letter Ostrow sent to Hinkfuss provides the only basis for asserting that a claim was made on the CNA policy during the policy period.

---

[2]A "claims made" policy insures for negligent acts provided a claim is made within the policy period. *See Chalk v. Trans Power Mfg., Inc.*, 153 Wis. 2d 621, 624 n.1, 451 N.W.2d 770, 772 n.1 (Ct. App. 1989).

The first issue concerns whether the correspondence between Ostrow and Hinkfuss constituted a claim within the meaning of the policy. The question whether undisputed facts give rise to the existence of a claim is a legal question. *See Chalk,* 153 Wis. 2d at 624-25, 451 N.W.2d at 772. We review such questions de novo. *State v. Nordness,* 128 Wis. 2d 15, 24, 351 N.W.2d 300, 304 (1986).

The CNA policy defines "claim" as "the receipt of a demand for money or services, naming you (insured) and alleging a wrongful act." This definition is substantially similar to the policy considered in *Chalk.* That policy defined a claim as " 'a demand received by the insured for money or services, including the service of suit or institution of arbitration proceedings against the Insured.' " *Id.* at 625, 451 N.W.2d at 772. In *Chalk,* the court held that two government requests seeking general information from an attorney's file did not constitute claims within the meaning of the "claims made" policy. The court concluded that these inquiries did not constitute a claim, because the agency investigators made no demand for money or other relief nor did they state that the attorney was going to be proceeded against for matters relating to his rendering of legal services. *Id.* at 631, 451 N.W.2d at 775. The court stated, "the agencies' requests can in no sense be seen as demands that Winderman [the attorney] take affirmative action to remedy any wrong, and that, . . . is what claims made coverage is all about . . .." *Id.* The court also noted that neither inquiry suggested that Winderman's legal work was either flawed or violated any law. *Id.* at 632-33, 451 N.W.2d at 775-76.

In the present case, the only reasonable construction of Ostrow's letter was to notify Hinkfuss and his insurer that the Rentmeesters would hold Hinkfuss

financially responsible in the event their appeal failed. In Ostrow's letter, he stated that the Rentmeesters intended to appeal. He next noted his "general distaste for professional malpractice claims," but requested that Hinkfuss notify his insurance carrier of the situation and ask a representative of his insurance carrier to contact Ostrow. In contrast to the inquiries in *Chalk*, Ostrow's letter could only mean that the Rentmeesters planned to seek relief from Hinkfuss if they lost on appeal. Moreover, not only did Ostrow term his demand "a claim," this is the precise construction that Hinkfuss gave the letter. Hinkfuss responded to Ostrow's letter stating that the "potential claim" would be forwarded to his insurance carrier and that he hoped the appeal would "work out."

The context in which Ostrow sent his letter to Hinkfuss supports our conclusion that the letter constituted a claim. The letter contained a demand for money for the financial loss suffered by the Rentmeesters as a result of the alleged error in drafting the land contract. The Rentmeesters' claim is no less a claim because it was contingent on the result of the appeal.

■

While not every contingent demand rises to the level of a claim, when the only condition is certain, ascertainable and agreed to by both parties, a demand has been made. On appeal, the Rentmeesters contended that the land contract Hinkfuss drafted did not embody the parties' true intent. The result of the appeal would determine whether the Rentmeesters suffered damages by Hinkfuss's alleged negligence. The pending appeal was the only contingency in this case. The eventual court of appeals' decision was easily ascertainable by all parties and certain to occur even though the exact result was as yet unknown. All parties agreed the appeal should

be taken. In this context, Ostrow's letter constituted a claim within the meaning of the CNA policy.

The second issue concerns Hinkfuss's delay in giving notice to CNA of the claim.[3] The CNA policy contained the following provision:

> You shall furnish notice or proof of loss as soon as reasonably possible and within one year after the time required by policy. Failure to furnish such . . . proof within the time required by the policy shall not invalidate or reduce a claim unless we are prejudiced thereby, and it was reasonably possible to meet the time limits.

CNA contends that coverage must be denied because Hinkfuss failed to deliver timely notice and CNA was prejudiced by Hinkfuss's delay. Because CNA was not prejudiced by any possible notice deficiencies, the failure to give notice does not affect the coverage guaranteed by the policy.

As a preliminary matter, we note that the burden is on Hinkfuss to prove that the insurer was not prejudiced by the untimely notice. Hinkfuss does not dispute that he failed to give notice of the claim within one year after the time required by the policy. In such situations, there is a rebuttable presumption of prejudice. *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis. 2d 130, 146-47, 277 N.W.2d 863, 872 (1979).

However, we will uphold the trial court's factual determinations underlying the question of prejudice

---

[3]CNA also contends that the statute of limitations bars this action. Because CNA first raises this issue in its reply brief, we decline to address it. *See Hogan v. Musolf,* 157 Wis. 2d 362, 381 n.16, 459 N.W.2d 865, 873 n.16 (Ct. App. 1990).

unless clearly erroneous. *See* sec. 805.17(2), Stats. Whether those findings fulfill the legal standard of prejudice is a question of law. *See Nottelson v. DILHR,* 94 Wis. 2d 106, 116, 287 N.W.2d 763, 768 (1980). We review legal questions de novo. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

The only relevant question is whether the untimely notice prejudiced CNA in its defense of the malpractice claim. The only prejudice CNA claims is that the untimely notice precluded it from intervening in the underlying action between the Rentmeesters and the Lanes. CNA argues it was prejudiced by its inability to conduct discovery, participate in settlement negotiations, file an amicus brief on appeal, challenge the trial court's findings and otherwise participate in the underlying action. CNA, however, does not elaborate on how it was prejudiced by its inability to participate in these proceedings. Even if we accept the dubious proposition that CNA would have been permitted to intervene in the underlying action, we decline to speculate on how the outcome of the underlying action might have been different had CNA participated. All CNA's rights to participate in the Rentmeesters' malpractice case against Hinkfuss still exist. Two trial attorneys testified that CNA was not prejudiced in preparing a legal malpractice defense, and all rights of discovery, the availability of evidence and preparation for trial were unaffected by the delay in notice. Therefore, the trial court properly concluded that CNA had not been prejudiced by any untimely notice.

*By the Court.*—Judgment affirmed.