No.  96-308

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

DAVID HERRON and VIVIENNE
HERRON,

Plaintiffs and Appellants,

v.

SCHUTZ FOSS ARCHITECTS,
JERRY SCHUTZ, and CONTINENTAL
CASUALTY COMPANY,

Defendants and Respondents.

APPEAL FROM:   District Court of the Twelfth Judicial District,
In and for the County of Liberty,
The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William D. Jacobsen, Thompson & Jacobsen, Great
Falls, Montana; Channing J. Hartelius, Hartelius,
Ferguson, Baker & Kazda, Great Falls, Montana

For Respondents:

Guy W. Rogers, Tiffany B. Lonnevik, Brown, Gerbase,
Cebull, Fulton, Harman & Ross, Billings, Montana
(Continental Casualty Company); Paul D. Miller,
Holland & Hart, Billings, Montana (Schutz Foss
Architects and Jerry Schutz)

Submitted on Briefs: October 24, 1996

Decided: March 25, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.


This is an action for declaratory judgment on issues concerning the limits of liability coverage available under a claims-made insurance policy. The District Court for the Twelfth Judicial District, Liberty County, entered Summary Judgment in favor of the insurer, Continental Casualty Company (Continental), and against the plaintiffs, David and Vivienne Herron (the Herrons). The Herrons appeal. We affirm.

We address the following issues on appeal:

1.    Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of which policy applies to the Herrons' claims?

2.    Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of the general limits of liability applicable to the Herrons' claims?

3.    Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of the specific limits of liability applicable to the Herrons' claims?

Factual and Procedural Background

During 1990 and 1991, Jerry Schutz and Schutz-Foss Architects (Schutz) designed an addition to and were remodeling the Liberty County Hospital and Nursing Home (the Hospital) in Chester, Montana. David Herron was the maintenance supervisor at the Hospital. On October 30, 1991, Herron was performing a maintenance check on the roof of the Hospital when he slipped on some ice and fell, injuring himself.

On January 22, 1992, Herron wrote Schutz to express his concerns about the unsafe method required to access the roof. In a list of complaints about the building, Herron referenced his fall, stating that "I have discovered this unsafe condition myself having slipped off this area, injuring my back." In his letter, Herron made no demand for money or otherwise indicate that he intended to hold Schutz responsible for his damages, nor did he

request that Schutz contact his insurance carrier.

On July 12, 1993, Herron's attorney, Channing Hartelius (Hartelius), wrote a letter to Schutz stating that his office represented Herron as to the October 30, 1991 accident. Hartelius requested that Schutz contact his malpractice insurance carrier and ask them to contact Hartelius' office immediately to discuss "this claim."

Mary Schutz forwarded Hartelius' letter to Baker Insurance (Baker), their local claims adjuster, on July 14, 1993. Baker completed a General Liability Notice of Occurrence/Claim form that same day. The form indicated that no claim had been made prior to Hartelius' letter. The form also indicated that the policy governing Herron's claim was the policy in effect from March 1, 1993, to March 1, 1994. The form listed the "Date/Time of Occurrence" as July 12, 1993, the same date noted as the "Date of Claim."

Baker subsequently forwarded the claim to Cindy Michel (Michel), Professional Liability Claim Specialist, at Continental. Continental had insured the architectural firm for professional liability since March 1, 1986. The policy also covered Jerry Schutz, individually, to the extent he acted as an agent of the firm. The policy issued to the firm was renewed on an annual basis, with the policy period running from March 1st of each year to March 1st of the following year.

Until the 1994-1995 policy year, the policy carried liability limits of $100,000. These were aggregate limits applicable to all claims made during the policy year. In other words, there was only $100,000 available to satisfy all claims made during a policy year, not $100,000 for each separate claim. Beginning with the 1994-1995 policy year, Schutz purchased increased coverage, upping the policy's aggregate limits to $1,000,000 for claims made during that policy year.

Michel completed a Claim Coding Form on August 6, 1993. On September 9, 1993, Michel wrote Hartelius requesting his theory of liability regarding the architectural design of the Hospital along with documentation of Herron's injuries and any medical treatment he may have received.

On October 7, 1993, Hartelius responded by letter to Michel's request. He alleged that Schutz was negligent when he breached his duty of ordinary care as an architect. Hartelius asserted that Schutz knew or should have known that "his design of the roof and accessibility to the penthouse were negligent."

Michel wrote Hartelius on February 8, 1994, denying liability and declining to make an offer for Herron's claim. On October 19, 1994, Herron and his wife filed a personal injury and loss of consortium action against Schutz alleging numerous deficiencies in the design and construction of certain aspects of the Hospital's roof.

The dispute eventually centered on which policy covered the Herrons' claims and, consequently, which limits of liability applied. The Herrons filed a Complaint for Declaratory Judgment on June 9, 1995, requesting that the District Court resolve the disputed issues. Continental filed a Motion for Summary Judgment on January 24, 1996, arguing that the applicable policy was the one in effect from March 1, 1993, to March 1, 1994, under which the policy limits were $100,000, but, after factoring in payments made on other claims during that policy year, the remaining limits were only $20,742.94. The Herrons filed a Motion for Summary Judgment on February 7, 1996, contending that the applicable policy was the one in effect from March 1, 1994, to March 1, 1995, under which the policy limits were $1,000,000.

Both motions were argued on March 18, 1996. On April 19, 1996, the District Court granted Continental's motion ruling that the 1993-1994 policy applied and that the Herrons' claims are subject to the remaining policy limits of $20,742.94 for the 1993-1994 policy year. The Herrons appeal.

## Standard of Review

Our standard in reviewing a grant of summary judgment is the same as that initially used by the district court. Dagel v. Farmers Ins. (1995), 273 Mont. 402, 405, 903 P.2d 1359, 1361 (citing Youngblood v. American States Ins. Co. (1993), 262 Mont. 391, 394, 866 P.2d 203, 204). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Dagel, 903 P.2d at 1361.

In Montana, the interpretation of an insurance contract is a question of law. Dagel, 903 P.2d at 1361 (citing Wellcome v. Home Ins. Co. (1993), 257 Mont. 354, 356, 849 P.2d 190, 192). We review a district court's conclusions of law to determine if the court's interpretation of the law is correct. Dagel, 903 P.2d at 1361 (citing Nimmick v. State Farm Mut. Auto. Ins. Co. (1995), 270 Mont. 315, 319, 891 P.2d 1154, 1156).

## Issue 1.

Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of which policy applies to the Herrons' claims?

The District Court determined that the July 12, 1993 letter from Hartelius to Schutz constituted a claim. Hence, the court granted Continental's Motion for Summary Judgment concluding that the 1993-1994 policy, along with that policy's limits of liability, which had been diminished to $20,742.94, applied to the Herrons' claims.

The Herrons contend that the 1994-1995 policy, along with that policy's $1,000,000 limits of liability, apply in this case because

they did not make a claim until they filed their personal injury and loss of consortium action against Schutz on October 19, 1994. The Herrons maintain that the July 12, 1993 letter was not a claim because it did not make a "demand for money or services" as the term "claim" is defined in the policy. Furthermore, they contend that if the July 12, 1993 letter is considered a claim, then the January 22, 1992 letter from Herron to Schutz must also be considered a claim, thereby implicating the 1991-1992 policy with its $100,000 limits of liability undiminished by any prior claims.

The term "claim" is defined at section IV of the policy as "the receipt of a demand for money or services, naming you and alleging a wrongful act." The Herrons maintain that Hartelius' letter merely informed Schutz that Hartelius was representing Herron with regard to the accident and asked Schutz to contact its malpractice carrier. They assert that no demand of any kind was set forth as required by the policy.

The Herrons argue that the language in the policy is ambiguous, thus Montana law requires that the terms of the policy be construed liberally in favor of the insured and strictly against the insurer. However, it is not the policy language that is ambiguous, it is the wording of the July 12th letter. As the District Court stated in its Order on Motions for Summary Judgment, "[t]he rule that an insurance policy is to be construed against the insurance company does not carry over to construction of correspondence from a claimant's lawyer." If the language in an insurance policy is clear and explicit, the policy governs. See 28-3-401, MCA.

The question here is whether the July 12th letter constituted a "demand for money or services" as required by the policy. In the only Montana case that discusses what constitutes the making of a claim under a claims-made insurance policy, Walker v. Larson (1986), 223 Mont. 333, 727 P.2d 1321, this Court held that the letters in question did constitute a claim although the policy in that case, unlike the policy in the instant case, failed to define a claim.

The Herrons cite to a New York case, In Re Ambassador Group, Inc. Litigation (E.D.N.Y. 1993), 830 F.Supp. 147, to support their contention that the July 12th letter was not a "demand for money or services." In Ambassador, the policy at issue did not define the term "claim" and the court in that case held that neither of the two letters in question constituted a claim as that term is normally viewed. Notwithstanding, Ambassador is distinguishable from the instant case in that the holding in Ambassador was based on the notice provisions in the policy. The policy characterized the reporting of a "claim" to the insurer as giving notice and the reporting of a "claim" directly to the directors and officers as the making of a claim. Thus the letters in question, because they were sent to the insurer, did not constitute a claim.

While the authority on this issue is divided, we conclude that the better reasoned authority holds that letters, like the one in the instant case, are claims. In Berry v. St. Paul Fire & Marine Ins. Co. (8th Cir. 1995), 70 F.3d 981, the Eighth Circuit Court of Appeals ruled that a letter asking the company to forward information to its insurance carrier qualified as a claim even though it lacked a request for damages in a specific dollar amount. There the policy defined a claim as a "demand in which damages are alleged." The court in that case stated:

True, the letter does not request payment of a specific dollar amount, but sometimes complaints in actions actually filed in Court don't either, so this omission does not seem inconsistent with the letter's being treated as a "claim." Treating the letter as other than a claim, it seems to us, requires a tortured construction of its text.

Berry, 70 F.3d at 982.

Furthermore, in Rentmeester v. Wisconsin Lawyers Mut. (Wis.App. 1991), 473 N.W.2d 160, a case involving the same insurer, Continental, and the same definition of a claim as in the case before us on appeal, the Court of Appeals of Wisconsin held that a letter from the claimant's attorney requesting the insured to contact his insurance carrier was a claim even though the letter did not contain a specific request for damages. The Wisconsin court stated:

[The] letter could only mean that the Rentmeesters planned to seek relief from Hinkfuss if they lost on appeal. Moreover, not only did [the plaintiff's attorney] term his demand "a claim," this is the precise construction that Hinkfuss gave the letter.

Rentmeester, 473 N.W.2d at 163.

The Herrons contend that Continental's argument in the instant case that the letter is a claim shows that the policy is ambiguous because Continental's argument is exactly opposite to its argument in Rentmeester. On the contrary, as the District Court stated in its order, Continental's assertions in Rentmeester do not bind it here, "[i]t is the result, not the argument, that has precedential value." Continental asserts in its brief on appeal that it is not unusual for a party to take a different position in one case than it did in a previous case and that this is particularly appropriate where the court in an earlier case rejects the party's argument. Continental contends that since the Wisconsin court struck down Continental's coverage argument in Rentmeester, it is only proper that Continental accept the law set forth in that case and adopt it as its position here.

The Herrons maintain that the July 12th letter only implies that a claim will be forthcoming at some point in the future. They assert that they did not make a claim until they filed their personal injury and loss of consortium action on October 19, 1994. Contrary to the Herrons' assertions, filing the action was not sufficient to bring the claim within the 1994-1995 policy year. The policy states that coverage exists during that period when a claim is first made against the company. Filing the complaint was simply the continued pursuit of David Herron's claim originally asserted in July 1993.

Where the alleged tortfeasor has reasonably been put on notice by the injured party that he intends to hold the tortfeasor responsible for his damages, it would, indeed, be anomalous to hold that a claim is, nevertheless, not made until a suit is actually filed. To do so would encourage litigation as opposed to negotiation and settlement. And, to the extent that the tortfeasor had a claims-made policy in force when he was notified, but did not have such insurance in force when the lawsuit was filed--perhaps a year or more later--then coverage would be frustrated altogether to the detriment of both the injured party and the tortfeasor.

Furthermore, 25-4-311, MCA, mandates that in actions for the recovery of money or damages for personal injury or wrongful death, the amount of damages sought may not be stated in the claim for relief. Thus, under the Herrons' interpretation of the policy language, their complaint, because it did not state a specific dollar amount, could not be considered a claim either.

Even though there was no request for a specific dollar amount in the July 12th letter, the text on its face indicates that the Herrons were seeking compensatory payment, otherwise, there would be no reason for Schutz to contact his insurance carrier. As the District Court pointed out in its order, "[w]hy else would a plaintiff's lawyer write to an alleged tort-feasor, ask him to contact his insurance carrier and say a claim exists, other than to make a demand for money damages."

Moreover, both sides treated the matter as a claim for money damages. In addition to initially labeling the Herrons' demand as a "claim," Hartelius referenced Continental's claim number in subsequent correspondence. Mary Schutz, believing the July 12th letter to be a claim, forwarded it to Baker on July 14, 1993. A notice-of-claim form was completed that same day and forwarded to Continental. Michel acknowledged the new claim by letter dated August 10, 1993, and addressed to Mary Schutz. On August 30, 1993, Hartelius provided additional information regarding the claim to Baker. Thereafter, Michel sent a letter to Hartelius requesting additional documentation regarding Schutz's alleged liability and Herron's injuries. Hartelius responded to this request by letter dated October 7, 1993, in which he included Herron's medical records and gave detailed accusations of Schutz's negligence.

Nevertheless, Continental denied the claim on February 8, 1994. Taking into consideration Hartelius' letters of July 12th, August 30th, and October 7th, all of which were written and sent during the 1993-1994 policy year, clearly a claim was made.

The Herrons argue that if we hold that the July 12, 1993 letter from Hartelius to Schutz constitutes a claim, then we must also hold that the January 22, 1992 letter from Herron to Schutz constitutes a claim, thus implicating the 1991-1992 policy. However, the January 22, 1992 letter did not direct Schutz to contact his insurer carrier, nor did it indicate in anyway that the Herrons intended to hold Schutz responsible for David Herron's injuries. Thus the letter does not reasonably fit within the policy definition of a claim. The reason for the January 22nd letter was simply to point out defects Herron perceived in the design and construction of the Hospital. It neither stated nor implied any other purpose.

Accordingly, we hold that the District Court was correct in concluding that the July 12, 1993 letter from Hartelius to Schutz was a claim under the policy and that the 1993-1994 policy applies to the Herrons' claims.

Issue 2.

Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of the general limits of liability applicable to the Herrons' claims?

The Herrons argue that under the 1994-1995 policy, the $1,000,000 limits of liability apply to their claims. They maintain that the endorsement in the 1994-1995 policy restricting coverage to a maximum of $100,000 when a claim is made prior to March 1, 1994, or when the policy holder had knowledge prior to that time of a wrongful act or circumstance which might result in a claim, is ambiguous and violates the reasonable expectations doctrine as well as public policy. However, since we have already determined that the 1993-1994 policy applies to the Herrons' claims rather than the 1994-1995 policy, we need not decide this issue.

Issue 3.

Did the District Court err in granting Continental's Motion for Summary Judgment on the issue of the specific limits of liability applicable to the Herrons' claims?

The District Court concluded that the Herrons' claims are subject to the remaining policy limits of $20,742.94 for the 1993-1994 policy year. The Herrons argue to the contrary, contending that regardless of when their claim was made, they are entitled to the liability limits in effect at the time of the wrongful act and those limits have not been diminished by payments on other claims.

The Herrons maintain that because the stated limits in effect during the 1993-1994 policy year and the stated limits in effect at the time of the wrongful act are identical and since the policy fails to define which set of limits will apply in that event, under the accepted rules of policy construction, the limits which provide the greatest degree of coverage--the undiminished limits in effect at the time of the wrongful act--must apply. They base their contention on the provision at section III(A)(1) of the policy, which provides:

Our obligation to pay is further limited to:

a. the amount of the limit of liability in effect at the time of the actual or alleged wrongful act, or

b. the amount stated as the limit of liability for this policy term,

whichever is less.

The Herrons maintain that, because the two limits are equal, this language in the policy creates an ambiguity and any ambiguity must be construed in their favor.

Contrary to the Herrons' assertions, we perceive no ambiguity in the policy language. The Herrons fail to note the policy language immediately preceding the policy provision cited by them, which states:

The limit of liability shown on the Declarations is the maximum we will pay for any one or more claim [sic] made during this policy term. This limit applies as excess over any deductible amount.

It is clear from this language in the policy that the maximum limit of liability for all claims made in any policy period is the purchased coverage, which in this case was $100,000. Continental then further limits its liability, in the provision cited by the Herrons, for acts which occurred before the policy period to the amount of insurance in effect at the time of the act. This prevents an insured who has a potential liability from increasing the limits before the claim is actually made.

Since Continental has limited its coverage for all claims made during the policy year to $100,000 and since it has already paid out nearly $80,000 on prior claims during the 1993-1994 year, the Herrons are limited to the remaining policy limits of $20,742.94 for the 1993-1994 policy year. We agree with the District Court that it is troubling that the amount of insurance coverage is limited here just because the claim happened to be made at an inopportune time, but, this is a problem that occurs with claims-made policies. However, as the District Court stated, "[e]ven insurance companies have the right to rely on the clear language of their policies."

Accordingly, we hold that the District Court did not err in granting Continental's Motion for Summary Judgment on the issue of the specific limits of liability applicable to the Herrons' claims.

Affirmed.

/S/  JAMES C. NELSON

We Concur:


/S/  J. A.  TURNAGE

/S/  WILLIAM E. HUNT, SR.

/S/  KARLA M. GRAY