The **LEXINGTON INSURANCE COMPANY, Plaintiff,**

v.

**RUGG & KNOPP, INC. and The Salt Lake City Corporation, Defendant.**

No. 96–C–126.

United States District Court, E.D. Wisconsin.

March 31, 1998.

David Joslyn, Rivkin, Radler & Kremer, Chicago, IL, for Plaintiff.

Eric Darling, Schmidt, Darling & Erwin, Milwaukee, WI, for Defendant Rugg & Knopp.

Donald P. Schneider, Schellinger & Doyle, S.C., Brookfield, WI, Gary Johnson, Richards, Brandt, Miller & Nelson, Salt Lake City, UT, for Defendant Salt Lake City Corp.

DECISION AND ORDER ADOPTING RECOMMENDATION OF MAGISTRATE JUDGE, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, ENTERING DECLARATORY JUDGMENT THAT PLAINTIFF MAY NOT DENY COVERAGE ON THE GROUND THAT PLAINTIFF WAS NOT GIVEN TIMELY NOTICE AND DISMISSING PLAINTIFF'S DECLARATORY JUDGMENT ACTION

CLEVERT, District Judge.

A district court must review *de novo* the recommendations of a magistrate judge to which either party timely objects. 28 U.S.C. § 636(b)(1)(C); *United States v. Raddatz*, 447 U.S. 667, 673–76, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The court may review any other aspect of a recommendation as it sees fit, although it has no obligation to undertake a *de novo* review absent specific objections. *See Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("Section 636(b)(1)(C) ... does not on its face require any review at all ... of any issue that is not the subject of an objection").

In this case, the court is asked to review a magistrate judge's recommendation on cross motions for summary judgment. Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir. 1990), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may discharge this initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies this initial burden, the burden then shifts to the nonmoving party, who must go beyond the pleadings and designate specific facts to support each element of its cause of action, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322–23; *Becker v. Tenenbaum–Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir.1990). Any doubt as to the existence of a genuine issue for trial must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The material facts of this case are not in dispute and the court adopts, by reference, the facts as set forth in the magistrate judge's recommendation. The critical issue is whether Wis. Stats. § § 631.81 and 636.26 apply to claims made policies, like the ones in the instant case. Because there are no disputed facts and the issue of whether the statutes apply is a matter of law for the court, summary judgment is appropriate in this case.

Plaintiff does not object to the magistrate judge's finding that the claims were made within the policy's coverage period. Plaintiff instead argues that the notice-prejudice requirements of the Wisconsin statutes no not apply to claims made policies.

Plaintiff's argument cannot be reconciled with the clear and unambiguous language of the Wisconsin statutes. Section 631.01 states, unequivocally, that Chapters 631 and 632 of the Wisconsin Statutes apply to "all insurance policies ... delivered or issued for delivery in this state" with a few stated exceptions. Any policy that violates a statute or rule is enforceable against the insurer as if it conformed to the statute or rule. Wis. Stat. § 631.15(3m).

Sections 631.81(1) and 632.26, Wis. Stats., govern "Timeliness of Notice" and "Required Provisions." Section 631.81 states: "Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit." Section 632.26(2) states that "failure to give notice as required by the policy ... does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there is no prejudice."

By the express language of the statute, the notice requirements are incorporated by law into all insurance contracts. *Lopardo v. Fleming Companies, Inc.*, 97 F.3d 921 (7th Cir.1996) (the Wisconsin notice of claim statute is additional provision of insurance contract that is incorporated into contract of insurance by operation of law). Thus, the cases cited by plaintiff are inapposite, and this court adopts the thorough analysis by the magistrate judge in this regard. By doing business in this state, plaintiff agreed to abide by Wisconsin's statutory scheme and cannot claim ignorance to avoid an undesirable result. Plaintiff has essentially asked this court to carve out an exception for claims made policies when there is no evidence of such exception in the statutes, comments, legislative history, or Wisconsin case law.

■ Accordingly, the only relevant question is whether the untimely notice prejudiced Lexington. There is a rebuttable presumption of prejudice when the insured fails to give notice of the claim within one year after the time required by the policy, *Rentmeester v. Wis. Lawyers Mut. Ins.*, 164 Wis.2d 1, 8, 473 N.W.2d 160 (Ct.App.1991), but the claim in this case was made to Lexington within seventeen days after the expiration of the policy. Although defendants bear the burden to show no prejudice, Lexington has not argued and cannot show that it suffered prejudice by the delay. The case can therefore be disposed of as a matter of law.

Now, therefore,

IT IS ORDERED that the court adopts the recommendation of the magistrate judge in its entirety.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is denied.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted.

IT IS FURTHER ORDERED that judgment shall be entered for the defendant declaring that plaintiff Lexington Insurance Co. shall not deny insurance coverage for defendant Salt Lake City Corporation's claims against defendant Rugg & Knopp under insurance policy # 8667036 on the ground that Lexington was not given timely notice of such claims.

IT IS FURTHER ORDERED that Lexington's claim is dismissed with prejudice.

## RECOMMENDATION TO DISTRICT JUDGE

GOODSTEIN, United States Magistrate Judge.

On February 2, 1996, the Lexington Insurance Company commenced this action in which it seeks a judgment declaring it is relieved of its duty to defend and indemnify Rugg & Knopp, Incorporated ("R & K") under R & K's insurance policy with Lexington. The Salt Lake City Corporation is also a defendant because the City has an interest in coverage under the insurance policy. R & K disputes Lexington's right to deny coverage and affirmatively counterclaims, seeking a declaratory judgment that the insurance policies cover the claims at issue.

This case was randomly assigned to this court. Jurisdiction is proper based upon diversity and amount in controversy. *See* 28 U.S.C. § 1332(a)(1). Venue is proper in the Eastern District of Wisconsin. *See* 28 U.S.C. § 1391(a). Because the parties did not consent to this court's full jurisdiction, the court is limited to issuing a recommendation with respect to Lexington's and R & K's respective motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(A).

## I. BACKGROUND

Many of the underlying facts are set forth in this court's decision of December 27, 1996, denying the motion of Salt Lake City for a transfer of venue. For purposes of the parties' motions for summary judgment, the following facts are undisputed.

### A. The Insurance Policies

In June, 1992, R & K was awarded a contract to design and partially construct a firefighting facility at the Salt Lake City Airport. (Jodi Howick Aff. at ¶ 4). As part of the contract, the City required R & K to acquire "errors and omissions" insurance coverage, the premiums for which were paid by Salt Lake City. (Howick Aff. at ¶ 5).

In April, 1994, Lexington issued a professional liability insurance policy to R & K (hereinafter "Policy 1"), which provided coverage from April 14, 1994, to April 14, 1995. (Complaint at ¶ 9, Ex. A). In February,

1995, R & K applied for a renewal policy (hereinafter "Policy 2"), which was issued for the period April 14, 1995, to April 14, 1996. (Complaint at ¶¶ 10, 11, Ex. B). When R & K applied to renew its policy in February, 1995, it indicated that it was not aware of any circumstances likely to give rise to a claim against R & K. (Lexington Memo., Ex. N). Both Policy 1 and Policy 2 contained the following language with respect to claims made coverage:

> The Company [Lexington] will pay on behalf of the Insured [R & K] all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to the Company during the policy period of this policy. This policy applies to actual or alleged negligent acts, errors, or omissions arising out of professional services rendered for others as designated in Item 7 of the Declarations.

> For this coverage to apply, all of the following conditions must be satisfied:

> 1. the negligent act, error or omission arising from professional services took place subsequent to the Retroactive Date stated in the Declarations;

> 2. the Insured had no knowledge prior to the effective date of this policy of such actual or alleged negligent act, error, omission or circumstance likely to give rise to a claim;

> 3. claim is first made against the Insured during the policy period;

> 4. the Insured must report the claim to the Company, in writing, as otherwise provided in this policy within the policy period or within the thirty (30) period od next succeeding the expiration of the policy period.

(Complaint Exs. A & B at p. 1, 473 N.W.2d 160).

The policies also contain the following exclusion clause:

> This policy does not provide coverage and the Company will not pay claim expenses or damages for ... any claim based upon or arising out of any alleged negligent act, error, omission, or circumstance likely to

give rise to a claim that an Insured had knowledge of prior to the effective date of this policy. This exclusion includes, but is not limited to, any prior claim or possible claim or circumstance referenced in the Insured's application.

(Complaint Exs. A & B at p. 2, 473 N.W.2d 160).

In addition, the policies contain the following reporting requirements:

This policy will provide coverage for a claim if based on a negligent act, error, omission or circumstance that the insured first becomes aware of during the policy period of this policy and promptly reports in writing to the Company before the end of the policy period.

The written report of a possible claim must include all available information about the possible claim. This report must include:

1. the potential claimant's name and address;

2. a description of the professional services provided or that should have been provided;

3. an explanation of the type of claim that is anticipated.

(Complaint Exs. A & B at p. 7, 473 N.W.2d 160).

## B. The Airport Construction Project

After the airport construction project began, Salt Lake City grew dissatisfied with R & K's work performance, as evidenced by the following letters. On January 18, 1995, the City informed R & K of two omissions in the project as of that date with regard to telephone installations and concrete materials. (Eric Darling Aff., Ex. 4). On January 27, 1995, the City informed R & K of electrical omissions. (*Id.*, Ex. 5). On February 15, 1995, the City informed R & K that a catwalk and stairway needed to be added to the project. (*Id.*, Ex. 6). On March 16, 1995, the City informed R & K that the construction project was hindered by the daily need to clarify the contract terms and that R & K's contract modifications caused "substantial cost increases to the project." Salt Lake City also requested a meeting with R & K to resolve such issues. (*Id.*, Ex. 7). On March 22, 1995, the City informed R & K that it

encountered omissions in R & K's drawings, which required the City to incur additional costs and delayed the project. The City also informed R & K that, at a later date, it would discuss the costs and delays on the project as a result of R & K's substandard performance. (*Id.*, Ex. 8). This letter was mailed from Salt Lake City's legal department and signed by an assistant city attorney. On April 4, 1995, the City, again through its legal office, informed R & K that its original concerns were yet to be resolved and that it requested that an R & K representative be present at the construction site at least three days per week until the project is returned to schedule. The City also told R & K that it would not make additional payments until this request was fulfilled and that failure to comply with the City's demands would result in R & K defaulting on its contractual obligations. (Lexington's Memorandum in Support of its Motion for Summary Judgment, Ex. I). On April 21, 1995, the City again expressed its concerns to R & K regarding R & K's ability to complete the project and requested that R & K reimburse the City for costs incurred as a result of change orders, which totaled $162,000. The City also told R & K that it would notify R & K's professional liability carrier that it intended to make a claim relating to such matters. (Lexington Memo., Ex. J).

According to Salt Lake City Attorney Jodi Howick, R & K failed to correct the quality control problems and as a result, the City terminated its contract with R & K on June 1, 1995. (Howick Aff. at ¶ 9). On the same date, the City notified R & K and Lexington that it sought compensation for claims against R & K related to negligent acts, errors and/or omissions arising out of the construction project. (Darling Aff., Ex. 11). Lexington states that it was not aware any claims were filed against R & K until it received this letter from the City.

## II. ANALYSIS

As indicated above, the parties filed cross-motions for summary judgment. Salt Lake City has joined R & K's motion. Because each motion is essentially a matter of interpreting the insurance policies at issue and

determining how they are affected by Wisconsin statutory law, the court will consolidate its analysis. Lexington contends that it need not provide coverage for the City's claims against R & K because the circumstances giving rise to the claims were not reported to Lexington within the period of coverage provided by Policy 1, nor was the claim reported within the required 30 days after the policy expired. Lexington also contends that Policy 2 does not provide coverage because R & K gained knowledge of the City's potential claims during the period of the first policy. R & K contends that a claim was made against it during the period of the first policy by way of the numerous letters submitted to R & K by the City; specifically, the March 22 letter which demanded R & K to correct the wrong in question. Furthermore, R & K argues that Lexington was not prejudiced by its delayed notice of the claim and therefore Wisconsin law does not allow Lexington to deny coverage based on an untimely notice.

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Anderson, 477 U.S. at 248.

The movant bears the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); see also Celotex Corp. v. Catrett, 477 U.S. at 323 (the moving party has the responsibility of informing the court of portions of the record or affidavits

that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden to show an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir.1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir.1989). If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## A. Policy 1

### 1. When did the City make a "claim ?"

Insurance policies issued in Wisconsin are governed by Wisconsin law. See Lopardo v. Fleming Companies, Inc., 97 F.3d 921, 926 (7th Cir.1996). The first issue, for which there appears to be no dispute, is when did the City made a "claim" against R & K, as defined by the insurance policy. The policies at issue are referred to as "claims-made policies," in which coverage is limited to claims made during the policy period. By contrast, "occurrence policies" provide coverage for any event occurring within the policy period, regardless of when the claim is filed. See National Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie, 997 F.2d 305, 306 (7th Cir.1993). The policies define "claim" as "any demand for money or services, including but not limited to, the service of suit or institution of arbitration proceedings against the Insured." (Policy 1 & 2 at p. 5). In addition, the Insured is under a duty to report a possible claim, i.e. "circumstance likely to give rise to a claim." (Policies at p. 1). As Judge Richard Posner states, this condition in effect broadens "the coverage of this claims-made policy by enabling the insured ... to accelerate a future claim and thus bring it within the current policy period. If the insured reasonably expects to be sued, he can by reporting his expectation to the insurance company treat the expected claim

as an actual one and thus be insured when it becomes actual." *National Union,* 997 F.2d at 306.

Here, the parties are in general agreement that R & K was notified of a potential claim at least as early as when it received the letter dated March 22, 1995, from the City's legal office. In fact, the undisputed facts establish that a claim was made against R & K on January 18, 1995, when the City informed R & K that it omitted phone service from the project plans, that the City was liable for $6,000 costs as a result of this omission, and that the City did not feel it should incur such costs. Certainly, the City's inference that R & K reimburse it for such costs corresponds to the policy's definition of a claim as a demand for money. Moreover, the City made another claim on February 15, 1995, when the City requested that R & K add a catwalk and stairway to the project. Specifically, the letter states: "Please be aware that the above referenced catwalk and stairway needs to be added to the project and is a safety omission on the part of Rugg and Knopp, Inc." (Darling Aff., Ex. 6). The City's demand that R & K install the catwalk and stairway corresponds to the policy's definition of a claim as a demand for services. The court also concurs with the parties that the March 22 letter, in which the City informed R & K that omissions in its drawings required the City to incur substantial costs and that R & K would seek compensation at a later date, constitutes a claim. Therefore, because Policy 1 insured against all claims made between April 14, 1994, and April 14, 1995, claims were made against R & K within the policy's coverage period.

### 2. Did R & K abide by the policies' notice requirements?

The facts are also undisputed that R & K did not notify Lexington, within the time required by Policy 1, that such claims were made. Policy 1 requires that all claims be reported as soon as practicable, or no later than 30 days after the policy expires. As Policy 1 expired on April 14, 1995, R & K was obligated to notify Lexington of any claim no later than May 14, 1995. However, the undisputed facts show that Lexington was not notified until June 1, 1995. Thus, under the terms of Policy 1, R & K is not entitled to coverage, because it did not provide timely notice, a prerequisite for coverage under § IA. of the policy.

### 3. The Wisconsin Notice Statutes

However, the terms of the policies at issue do not exist in a vacuum. The court must also consider what effect, if any, §§ 631.81(1) and 632.26 Wis. Stats. have on the policies. Section 631.81(1), Wis. Stats., states: "Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit." In addition, § 632.26(2) states that "failure to give notice as required by the policy ... does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there is no prejudice." R & K, as well as the City, argue that §§ 631.81 and 632.26 are incorporated by law into the policies at issue and, because Lexington does not show how it was prejudiced by the untimely notice, it must provide coverage for the City's claims against R & K. Lexington, on the other hand, contends that the notice statutes do not apply to claims-made policies.

Because neither the statutory scheme nor legislative history purport to exempt claims-made policies from the notice provisions, this court concludes that §§ 631.81 and 632.26 apply to the policies at issue. First, chapters 631 and 632 of the Wisconsin Statutes, which govern insurance contracts generally, apply to all insurance policies delivered or issued for delivery in Wisconsin unless otherwise provided. § 631.01(1), Wis. Stats. Thus, as the Legislature did not expressly exempt claims-made policies from the notice requirements, the court should not infer such an exemption given that the Legislature *did* expressly provide that Chapters 631 and 632 apply generally to all insurance policies issued in Wisconsin. Moreover, the comment accompanying § 631.81 states that the prejudice requirement—failing to timely notify the

insurer does not preclude coverage unless the insurer is prejudiced by such failure— applies to all insurance contracts. Section 631.81, Comment. In addition, the Legislative Council's note accompanying § 632.26 states that subsection (2) of the statute, the prejudice requirement, applies to all liability insurance. Section 632.26, Note. Thus, a consistent pattern emerges from the statutes that the insurer must be prejudiced by an insured's untimely notice before the insurer may deny coverage.

Given Wisconsin's statutory scheme, the federal cases cited by Lexington to support its theory that the notice statutes do not apply are inapposite to the instant case. In *National Union,* the Seventh Circuit held that, during the period of a claims-made policy, if the insured learns about an act that can reasonably be expected to give rise to a claim, a claim made in a subsequent period is not covered unless the insurer received written notice of the event during the policy period. *National Union,* 997 F.2d at 307. However, the court, was applying Illinois law, and was not confronted with a statute that created its own notice period and which operated by law upon all policies issued in the state, as is the case in Wisconsin.

In *Esmailzadeh v. Johnson & Speakman,* 869 F.2d 422 (8th Cir.1989), the court held, applying Minnesota law, that the notice provision in a claims-made policy could not be excused. *See id.* at 424. The court noted that the reporting requirement helps to define the scope of coverage under a claims-made policy and allowing the insured to avoid the notice provision would alter a basic term of the contract. *Id.* However, there is no indication that Minnesota, like Wisconsin, enacted a statutory notice provision that is incorporated into all liability insurance policies by law. Thus, unlike *Esmailzadeh,* this court will not alter the terms of the contract by applying the statutory notice provisions because such provisions are deemed to be part of the contract from its inception. *See Garcia v. Regent Insurance Co.,* 167 Wis.2d 287, 303, 481 N.W.2d 660, 667 (Ct.App.1992) (§ 631.81(1) represents an additional provision of the insurance contract by operation of law).

In *United States v. Strip,* 868 F.2d 181 (6th Cir.1989), the court, applying Ohio law, distinguished claims-made policies from occurrence policies by the notice provision included in claims-made policies:

It is exactly this aspect of a claims-made policy that distinguishes it from an occurrence policy. Claims-made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time. To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed.

*Id.* at 187.

There is no intimation that the *Strip* court was presented with an Ohio notice statute governing the notice provisions of the policy. Thus, *Strip* is not particularly relevant to the case at bar. In Wisconsin, the notice statutes are incorporated into the policies by law; therefore, the parties bargain and pay for coverage provided under Wisconsin statutes, as well as the policy itself.

The Wisconsin cases cited by Lexington are also of limited value to the instant case. In *Kenefick v. Hitchcock,* 187 Wis.2d 218, 522 N.W.2d 261 (Ct.App.1994), a claims-made policy lapsed in March, 1987. A lawsuit was brought against the insured in 1992, although the insured first received written notice of the claim in 1991. The insured argued that, because one of the insurer's agents was on site during the policy period when the basis for the claim was discovered in 1986, the insurer was on notice of the claim. The court rejected this theory, noting that the policy was effective only for "claims" made within the policy period and reported to the insurer within the policy period or 15 days thereafter. Thus, because claims-made policies only insure for claims made during the term of the policy, the insurer was not obligated to provide coverage. *Id.* at 230, 522 N.W.2d at 265. Moreover, the court held that the agent's knowledge of an event is not a "claim," and proof of such knowledge does not constitute notice of a claim. *Id.* at 230, 522 N.W.2d at 266. By contrast, the parties before this court agree that a claim was made against the insured while Policy 1 was

in effect. The only question is whether R & K may be excused from the notice requirement contained in the policy, which was an issue not presented to the *Kenefick* court. Because the claim in *Kenefick* was not made while the policy was in effect, the court did not need to decide whether the insured timely notified the insurer of a claim. This case does not advance Lexington's position.

A similar factual disparity is present in *Maryland Casualty Co. v. Ben–Hur*, 203 Wis.2d 411, 553 N.W.2d 535 (Ct.App.), *rev. denied*, 205 Wis.2d 134, 555 N.W.2d 814 (1996), where the insured received notice of a claim on September 8, 1992, but the claims-made policy expired on September 6, 1992. Construing the policy at issue, the court held that the insured must *receive* a claim for the claim to be made. *Id.* at 419, 553 N.W.2d 535, 553 N.W.2d at 538. Again, the issue before the court was whether a claim was made during the policy period, not whether the insurer received timely notice of a claim.

Both parties refer to a Michigan case for support, *Stine v. Continental Casualty Co.*, 419 Mich. 89, 349 N.W.2d 127 (1984). The case merits an extended discussion because the Michigan Insurance Code contains a notice provision similar to the Wisconsin Statutes. In *Stine*, the insurer appealed the Michigan Court of Appeals' decision finding that it was obligated to provide coverage under a claims-made policy. The insured, an architect, purchased a professional liability policy which was effective from February, 1972, until February, 1973; a renewal policy extended its term to February, 1974. However, the policy was canceled in January, 1974 because the insured failed to pay his premiums. In November, 1976, a lawsuit was filed against the insured for errors and omissions committed on an architectural project alleged to have occurred between June, 1971, and November, 1975.

The Michigan notice statute, § 3008, Mich. Comp. Laws, states:

> In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and also a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as reasonably possible.

The Michigan Court of Appeals held that the insured was entitled to coverage under § 3008 because, although the plaintiff did not provide notice within the time prescribed by the policy, he did provide notice as soon as reasonably possible. *Stine v. Continental Casualty*, 112 Mich.App. 174, 315 N.W.2d 887, 889 (1982). However, the Michigan Supreme Court reversed, noting that § 3008, as applied to a claims-made policy, refers to notice by the insured to the insurer that a claim against the insured was made during the policy period. *See supra*, 349 N.W.2d at 134. Thus, because the claim was not made during the policy period, § 3008 did not apply and the timeliness of notice to the liability carrier was immaterial. *See id.* at 135. Significant for present purposes is the court's statement regarding the general applicability of § 3008 to claims-made policies:

> [A]s a general proposition, § 3008 will affect a "claims made" policy only with respect to its notice provision. Section 3008 would be applicable in a "claims made" type of policy, for example, in the situation in which a claim was made against the insured during the policy period, but notice could not reasonably have been given to the insurer within the specified number of days after the policy expired.

*Id.* at 134.

Thus, the court proceeded on the basis that the notice provision of the statute applied to claims-made as well as occurrence policies. As the Michigan Supreme Court stated, the requirement that a claim be made during the policy period defines the scope of coverage in a claims-made policy, not the requirement that the insurer be notified within a certain period. *See id.* Thus, the notice requirement as established in the Wisconsin Statutes does not effectively eviscerate claims-made policies, as Lexington alleg-

es. Claims are still to be made against the insured during the policy period; the legislature has simply extended the period of notification of such claims to the insured.

The court concludes that §§ 631.81(1) and 632.26 apply to the claims-made policies at issue, and the final step is to now apply that law to the facts of this case. As noted above, §§ 631.81(1) and 632.26 represent additional provisions to the insurance policies which are incorporated into the policies as a matter of law. *See Garcia*, 167 Wis.2d at 303, 481 N.W.2d at 667. Thus, R & K's notice is not deemed untimely and does not preclude recovery "if the notice is furnished as soon as reasonably possible within one year of the time notice is required by the terms of the insurance policy, and the insurer is unable to prove prejudice or that it was possible to give notice within the time limit required in the policy." *Gerrard Realty Corp. v. American States Insurance Co.*, 89 Wis.2d 130, 146, 277 N.W.2d 863, 872 (1979). Sections 631.81(1) and 632.26 in effect create a burden-shifting process. First, the insured must show that it provided notice as soon as reasonably possible within one year of the time notice is required by the policy. If the insured meets its burden, the insurer bears the burden to show that it was prejudiced by the delayed notice.

Here, because Policy 1 expired on April 14, 1995, the policy required that R & K inform Lexington of any claims made during Policy 1's term by May 14, 1995. However, Lexington was not informed of the potential claims until June 1, 1995. Although R & K does not offer a reason for its delay in notifying Lexington of potential claims, the fact that Lexington was notified only 17 days after the date required by the policy is sufficient to show that R & K provided notice as soon as reasonably possible within one year of the time notice was required by Policy 1. Moreover, R & K was advised on April 21 by the City that the City would notify Lexington of its claims against R & K. Thus, R & K was led to believe that Lexington would be promptly placed on notice, although, as the insured under the policy, R & K has the primary obligation to see that the insurer receives timely notice.

Under the statutory scheme, Lexington must now show that it was prejudiced by R & K's 17-day delay to avoid providing coverage for the claims at issue. However, since it has focused on the applicability of the notice-prejudice statutes to claims-made policies, Lexington has not attempted to show how it was prejudiced by the delay. Indeed, given a 17-day delay, Lexington's attempt to show prejudice might be futile. The purpose of the requirement that an insurer be given timely notice is to allow the insurer an opportunity to "investigate possible claims against the policy or its insured while the witnesses are available and their memories are fresh." *Gerrard*, 89 Wis.2d at 140, 277 N.W.2d at 869 (citing *Kolbeck v. Rural Mutual Insurance Co.*, 70 Wis.2d 655, 659, 235 N.W.2d 466 (1975)). Under most circumstances, a 17-day delay will not frustrate such purposes and, because Lexington does not indicate otherwise, the court finds that Lexington was not prejudiced by R & K's delayed notice.

To summarize, this court finds that a claim was made against R & K during the period that Policy 1 provided coverage to R & K and that R & K failed to notify Lexington of such a claim within the period specified by the policy. However, as §§ 631.81(1) and 632. 26 apply to R & K's policies with Lexington, because R & K provided notice to Lexington as soon as reasonably possible within one year after it was required by the policy, and because Lexington does not show that it was prejudiced by R & K's untimely notice, this court finds that Lexington may not deny coverage based on untimely notice of claims.

**B. Policy 2**

██ The foregoing discussion only relates to claims made while Policy 1 was in effect. Lexington argues that the April 21 letter, in which the City demanded $160,000 from R & K for costs incurred as a result of change orders, constitutes a separate claim that is subject to Policy 2's provisions. Lexington's theory for denying coverage for this claim is not based on untimely notice. Rather, Lexington argues that because this claim is based upon acts that R & K knew were likely to give rise to a claim prior to the effective

date of the policy, R & K is not entitled to coverage.

As noted previously, Policy 2 states that the policy does not provide coverage for "any claim based upon or arising out of any alleged negligent act, error, omission, or circumstance likely to give rise to a claim that an Insured had knowledge of prior to the effective date of this policy." (Complaint, Ex. B at p. 2). The April 21 letter states that because R & K failed to "provide direction in the past," the City was required to execute four change orders directly related to R & K's design omissions, which required the City to incur $162,000 in costs. While the April 21 letter may appear to be a claim separate from the claims made previously, it is in fact a more detailed accounting of the claims made on January 18, February 15 and March 22. For example, in its March 22 letter, the City referred to substantial omissions in R & K's drawings which required costly modifications. Further, the City stated that, at a later date, it would contact R & K about the costs and delays on the project. The April 21 letter is likely the future contact to which the City referred in its March 22 letter. Thus, rather than construing the April 21 letter as an additional claim, the court construes the letter as an addendum to the City's March 22 claim. Although R & K had knowledge of the events surrounding the costs referred to in the City's April 21 letter prior to Policy 2's effective date, R & K was not made aware of the exact costs its omissions required the City to incur, which the April 21 letter accomplished. Accordingly, the court finds that the costs referred to in the April 22 letter were simply an addendum to the City's March 22 claim and therefore, thus falls under the coverage provided by Policy 1.

**IT IS THEREFORE RECOMMENDED** that Plaintiff Lexington Insurance Company's motion for summary judgment be denied and Defendant Rugg and Knop Incorporated's motion for summary judgment be granted.

**IT IS FURTHER RECOMMENDED** that the Lexington Insurance Company's declaratory judgment action be dismissed and that declaratory judgment be entered to the effect that Lexington may not deny coverage for the Salt Lake City Corporation's claims against Rugg & Knopp on the ground that Lexington was not given timely notice of such claims.

The Clerk of Court is directed to transfer this case to a district judge to consider this recommendation. Pursuant to Local Rule 13.03(c), any party may object to this recommendation within 10 days from the date of service.