INTERNATIONAL FLAVORS & FRAGRANCES, INC.,
Plaintiff-Counterclaim-Defendant-Appellant,

v.

VALLEY FORGE INSURANCE COMPANY
and Continental Casualty Company,
Defendants-Counterclaim-Third-Party
Plaintiffs-Respondents,

v.

BUSH BOAKE ALLEN, INC., Century Indemnity
Company and Zurich American Insurance
Company, Liberty Mutual Insurance Company,
and Royal Insurance Company of America,
Third-Party Defendants-Respondents,

AIU INSURANCE COMPANY, American Home
Assurance Company and National Union Fire
Insurance Company of Pittsburgh, Pennsylvania,
Third-Party Defendants.

Court of Appeals

No. 2006AP1028. Oral argument May 31, 2007.
—Decided July 11, 2007.

2007 WI App 187

(Also reported in 738 N.W.2d 159.)

On behalf of the plaintiff-counterclaim-defendant-appellant, the cause was submitted on the briefs of *Eric J. Van Vugt* and *Lars E. Gulbrandsen* of *Quarles & Brady, LLP* of Milwaukee, and *Nicholas J. Zoogman* and *John P. Winsbro* of *Dickstein Shapiro, LLP*, of New York, New York. There was oral argument by *Nicholas J. Zoogman*.

On behalf of the defendants-counterclaim-third-party plaintiffs-respondents, the cause was submitted on the brief of *Susan Tyndall* of *CMT Legal Group, Ltd.* of Waukesha and *Michael L. Anania* of *Ford, Marrin,*

*Esposito, Witmeyer & Gleser, LLP*, of New York, New York. There was oral argument by *Edward M. Pinter*.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. BROWN, J. In this appeal, International Flavors & Fragrances, Inc., seeks indemnity and defense from Valley Forge Insurance Company and Continental Casualty Company (collectively "CNA") for dozens of suits filed against IFF by current and former popcorn factory workers who claim to have been sickened by exposure to butter flavoring. The circuit court held that IFF had failed to give CNA timely notice of the suits and that the late notice prejudiced the insurer, and so it granted summary judgment to CNA. We reverse because although IFF was untimely in notifying CNA with regard to some of the actions, IFF has demonstrated that CNA could have taken part in the actions at the time it gave notice with no damage to its interests. We also decline to uphold the summary judgment on alternative grounds proffered by CNA. The parties and the circuit court agreed to litigate the issues of the case in a particular order and, as a result, only the late-notice issue is properly developed for our review. We conclude that remand is necessary to address the remaining issues.

¶ 2. The relevant facts are undisputed. IFF brought this action seeking coverage for underlying lawsuits proceeding in Jasper County, Missouri (the *Benavides*[1] suits). The *Benavides* plaintiffs were work-

---

[1] Though commenced as one action, the *Benavides* claims were ultimately severed, *Benavides v. Int'l Flavors & Fragrances, Inc.*, No. 01–CV–683025 (Mo. Cir. Ct. 1st Div. Jan 15, 2004); we will refer to the resulting actions collectively as the *Benavides* cases for convenience.

ers at a Jasper popcorn plant and their spouses, and they alleged that IFF and its corporate predecessor, Bush Boake Allen, Inc., had manufactured butter flavoring that caused their injuries. The plaintiffs commenced their suit in September 2001. The entire case was set for a four-week trial beginning March 1, 2004, but in January 2004, the Missouri court found that the plaintiffs had not properly sought class certification, and it severed each worker's or worker/spouse pair's claim and assigned a docket number to each case. One claim, that of Eric and Cassandra Peoples, remained set for trial on March 1, 2004, and the rest were transferred to the presiding judge so that other trial dates could be set. The defendants had requested a continuance on the ground that extensive discovery, including eighty-one depositions, remained to be done, but the court denied that request, noting that with only one worker's case set for March 1, 2004, not all discovery would need to be completed before that date.

¶ 3. Upon being sued in 2001, IFF gave prompt notice to the insurers it was aware of, and each ultimately defended IFF. In 2002, IFF learned through discovery that a Wisconsin company called Auro Tech, Inc., had shipped butter flavoring to the Jasper plant during the time that some of the plaintiffs were working there. Auro Tech had later merged with IFF. In February 2004, just after the Missouri court severed the *Benavides* claims, IFF discovered that Auro Tech had carried liability insurance from CNA during part of the relevant period. It notified CNA of the pending suits that same month. IFF then commenced this action in the circuit court.

¶ 4. CNA answered by denying coverage on several grounds, including late notice, and added a counterclaim and third-party claims. The counterclaim

asked the court to decide coverage not only for the *Benavides* cases, but for other butter flavoring suits that had since been filed against IFF in courts across the Midwest. In the third-party claims, CNA joined all of the other insurers defending IFF, and asked that if the court should find that CNA owed IFF coverage, the court should also determine the allocation of coverage among all of the insurers.

¶ 5.  Eventually, the parties agreed to divide the litigation into two phases. The first phase would require the participation only of IFF and CNA and would decide three issues:  (1) "Whether [CNA] issued general liability and/or umbrella insurance policies to Auro Tech Inc."; (2) if so, "what are the terms and conditions of those policies, and did IFF succeed to the rights and obligations of Auro Tech Inc. under one or more of them"; and (3) if IFF did succeed to such rights and obligations, "whether IFF breached the notice of occurrence and/or claim conditions of those policies with respect to one, or more, of the Butter Flavor Claims, and whether, as a consequence of such breach of condition(s), IFF is precluded from coverage under such policies with respect to such Butter Flavor Claims under applicable law." The litigation of any remaining issues was to be stayed until the resolution of these three questions.

¶ 6.  Both IFF and CNA moved for summary judgment. In addition to arguing that it was prejudiced by IFF"s late notice, CNA's motion also asked for summary judgment on the grounds that no injury had occurred during the policy period and that no plaintiff claimed to have been injured by Auro Tech's flavoring. IFF objected that these arguments were beyond the scope of Phase I and moved to strike them from the motion papers. At a hearing scheduled to address the motion to

strike, the circuit court informed the parties that it would not address IFF's motion because it had decided to grant summary judgment for CNA on late-notice grounds. After noting that prejudice is presumed where notice is more than one year late, the court went on:

> The Court can reasonably infer that discovery deadlines, witness exchanges were made; that tactical decisions were required to be made; that as a consequence the defendants were deprived of their opportunity, certainly, to participate in depositions and other . . . discovery, interrogatories and, as well, claim documents; independently investigate the claims as well as participate in any form of mediation or arbitration that they could have availed themselves to. The fact that there may have been a competent and thorough defense in the absence of CNA's participation begs the question because, quite frankly, CNA is entitled to have its own counsel represent its interest and weigh in as to its viewpoint on the case, and clearly there was no time here that was afforded . . . defendants to make a timely investigation and conduct any discovery . . . .

> There's been nothing in the record, in my estimation, that rebuts that presumption of prejudice . . . and accordingly the Court is satisfied that there exists no genuine issue of material fact . . . that defendants CNA have been prejudiced in terms of the late notice of the pendency of these lawsuits . . . .

¶ 7.   The circuit court then issued a written judgment declaring that CNA has no responsibility "for any sums IFF incurs or pays for the defense of underlying actions against IFF by plaintiffs claiming to have been injured as a result of exposure to butter flavoring" nor for "any sums IFF incurs or pays to the plaintiffs in the Underlying Butter Flavor Actions as damages."

¶ 8. IFF appeals, arguing that the court erred in granting judgment to CNA on late-notice grounds. The policies at issue require the insured to notify CNA "as soon as practicable" of any claim, suit, or occurrence that could give rise to a claim. By statute, however, the failure to provide timely notice as required by the policy does not defeat coverage unless the insurer is prejudiced thereby; where notice is more than one year overdue, the burden is on the insured to demonstrate lack of prejudice. *See* Wis. Stat. §§ 631.81, 632.26 (2005–06);[2] *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 59, 261 Wis. 2d 4, 660 N.W.2d 666. IFF concedes that it gave late notice of the *Benavides* cases, so the issue is whether this prejudiced CNA. While the existence of prejudice is ordinarily a question of fact, it may nevertheless be resolved on summary judgment where there is no genuine issue of material fact and one party is entitled to judgment as a matter of law. *Fireman's Fund*, 261 Wis. 2d 4, ¶ 59. While IFF and CNA disagree over whether IFF's late notice prejudiced CNA, the dispute is about the legal conclusion to be drawn from the undisputed facts and is thus appropriate for summary judgment. *See id.*, ¶ 60. We review the application of law to agreed-on facts de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 317, 401 N.W.2d 816 (1987).

¶ 9. Prejudice to the insurer is "a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the

---

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

insured to provide timely notice." *See Neff v. Pierzina,* 2001 WI 95, ¶ 44, 245 Wis. 2d 285, 629 N.W.2d 177. An insurer suffers prejudice "when it has been denied the opportunity to have input into the manner in which the underlying claim is being defended." *Fireman's Fund,* 261 Wis. 2d 4, ¶ 61.

¶ 10. IFF makes several arguments as to why CNA was not prejudiced by late notice of the *Benavides* cases, falling into two broad areas. First, it points out that the Missouri court severed the *Benavides* actions and set only one of them, the Peoples' case, for trial on the original date of March 1, 2004, a few weeks after IFF"s notice to CNA. Because Eric Peoples did not work at the Jasper plant until several years after the CNA policies expired, however, CNA had no exposure in this case. Discovery remained open in the rest of the cases; as noted above, IFF had recently requested a continuance because eighty-one depositions remained to be taken, along with other discovery. In fact, the first settlement with any plaintiff who worked at the Jasper plant during the CNA policy period occurred in December 2004, ten months after IFF notified CNA. The first jury verdict for a *Benavides* plaintiff for which CNA faced exposure came in March 2005, thirteen months after IFF notified CNA. Thus, according to IFF, its notice, though late, did not impair CNA's ability to "investigate, evaluate, or settle a claim, determine coverage, or present an effective defense" for any of the claims potentially implicating its policy. Nor did it deny CNA the opportunity to have input into the defense of the claims, since discovery was still pending and the first trial was still nearly one year off.

¶ 11. IFF analogizes to *Bradley Corp. v. Zurich Insurance Co.,* 984 F. Supp. 1193 (E.D. Wis. 1997), in which the court stated that the insurance company

740

"cannot have been prejudiced when it had the opportunity to participate in the methods of discovery and case strategy but failed to do so." *See id.* at 1203. There, the insurer received notice more than nine months after the suit had been filed and after the discovery deadline set by the court had passed. *Id.* at 1196, 1202. However, the parties had continued discovery after the deadline, but the insurer did not know this because it had failed to contact the insured about the status of the case. *Id.* at 1203. IFF also cites to *Rentmeester v. Wisconsin Lawyers Mutual Insurance Co.*, 164 Wis. 2d 1, 473 N.W.2d 160 (Ct. App. 1991), in which we held that more than one year's delay did not prejudice the insurer where it had the opportunity to conduct discovery, collect evidence, and prepare for trial. *See id.* at 8–9.

¶ 12.  Both *Bradley Corp.* and *Rentmeester* involved facts more favorable to the insured than does this case. In *Bradley Corp.*, the insured had defended the case on its own and won, so the insurer was not well-positioned to claim prejudice due to late notice. *See Bradley Corp.*, 984 F. Supp. at 1202. In *Rentmeester*, though the insured did not notify the insurer of the *claim* for over one year, *id.*, 164 Wis. 2d at 8, the insurer was notified at the time the underlying *suit* was commenced, and its ability to collect evidence and prepare a defense was unaffected. *See id.* at 5, 9. Unlike the insured in *Bradley Corp.*, IFF incurred substantial liability to various plaintiffs, and unlike the insured in *Rentmeester*, it did not notify CNA of the underlying suit for more than two years after it was commenced.

¶ 13.  Nevertheless, we agree with IFF that the timeline of the *Benavides* cases supports its argument that CNA was not prejudiced. While the trial court "infer[red] that discovery deadlines [had passed]" and

741

various other milestones in the litigation had occurred, the evidence in the record shows otherwise with respect to all of the claims for which CNA could be liable. IFF has demonstrated that, contrary to the circuit court's holding, CNA had the opportunity to enter the litigation, investigate, conduct discovery, and participate in decision making.

¶ 14. IFF also points out that CNA has maintained from the outset of this litigation that it has no liability in the *Benavides* suits because IFF is not a successor in interest to Auro Tech's rights under the policies. CNA took this position in its counterclaim and third-party complaint, which was filed in April 2004, eight months before the first settlement of a *Benavides* claim that might implicate CNA. Thus, IFF argues, since CNA believed that it had no coverage obligations because IFF was not a successor to Auro Tech's rights, it would have denied coverage no matter when IFF gave notice of the suit. CNA therefore cannot claim to have been prejudiced by IFF's late notice; rather, any harm that has come to CNA because it was not involved in the *Benavides* defense is the result of its own decision to deny coverage.

¶ 15. In support, IFF points to *Fireman's Fund*. In that case, the underlying suit had been pending for fifteen months before the insurer received notice. *See Fireman's Fund*, 261 Wis. 2d 4, ¶¶ 58, 61. When the insurer did receive notice, an important hearing was only two weeks away. *Id.*, ¶ 61 The insurer claimed prejudice on the ground that it could not reasonably hire counsel and digest a year's worth of discovery in two weeks. *Id.* However, the supreme court noted that the insurer's litigation manager had testified that he would have denied a duty to defend even if he had been notified of the suit immediately. *Id.*, ¶ 62. The court

held as a matter of law that the insurer had not been prejudiced, since the timing of the notice would not have changed the insurance company's decision not to defend the suit. *Id.*, ¶ 63.

¶ 16. As CNA points out, the facts of this case are different from *Fireman's Fund*. Unlike in *Fireman's Fund*, here CNA has not admitted that it would have taken the same action if it had received timely notice of the suit. Rather, CNA has argued from the beginning of this case that, given timely notice, it would have gotten involved in the actions, not because it had no defense to coverage, but so that it could determine whether coverage existed. We agree with CNA that *Fireman's Fund* does not directly control this case.

¶ 17. But we must also reject CNA's attempt to analogize this case to *Phoenix Contractors, Inc. v. Affiliated Capital Corp.*, 2004 WI App 103, 273 Wis. 2d 736, 681 N.W.2d 310, in which we held that an insurer was prejudiced by late notice where it was notified of the suit one month before trial, when discovery had been closed for five months. *See id.*, ¶¶ 4, 21. This analogy simply ignores the relevant differences between that case and this one; in particular that only the Peoples' trial, for which CNA could not be liable, was imminent when it received notice, and that discovery remained open in the other cases. We stressed in *Phoenix Contractors* that an insurer has the right to have input into the defense, and that an insured cannot simply rely on the claim that it defended the action well enough on its own. *See id.*, ¶¶ 19–21. Here, however, IFF has shown that CNA had the opportunity to have that input and CNA took no action.

¶ 18. And it is this showing that carries the day for IFF. CNA was invited to participate in the *Benavides* actions when discovery was still open and no trial date

affecting CNA's interest was approaching. It had the chance to get involved, but decided not to, at least in part because it did not believe its policies were implicated. Whether CNA was correct in this belief has not yet been determined, but CNA cannot claim prejudice from late notice after it turned down its opportunity to participate.

¶ 19.   CNA could still prevail if it were able to point to some way in which it was harmed before the notice was given, but we do not find its examples of prejudice convincing. First, CNA argues that it does not matter that there was ample time for it to participate in all of the actions for which it might have been liable. This is because the Peoples' trial was a mere month off and

> [i]n the mass tort context, an insurer who is deprived of the right to participate in the defense of the first action to go to trial is substantially prejudiced with respect to later actions because it is the lead case that sets the stage for the management and resolution of the remaining actions.

CNA further claims (without citing the record or explaining further) that by the time it was notified, "the litigation strategy . . . had been completely formulated and executed." Aside from these statements, CNA provides no explanation of precisely how its nonparticipation in the Peoples' case (in which, again, its policy was not implicated) caused it any harm in the other cases (in which it arguably was). Nor has CNA cited any cases in support of its "setting the stage" theory. There might well be instances in which inability to participate in one trial causes an insurer prejudice in another, but we need more than a bald assertion to hold that this is the case here.

744

¶ 20. CNA next focuses on the discovery conducted before it received notice of the case. It states that during this time it was "barred from all strategy regarding it—from the big picture decisions; e.g., from whom discovery would be taken, to the minute details of what specific questions would be asked." Obviously, CNA is correct that it could not participate in this discovery, but it again fails to tell us whom it might have questioned or what it might have asked. As such, CNA is essentially asking us to find prejudice based on delay alone, since an insurer can never participate in litigation that it does not know is occurring. And again, as discussed above, IFF has demonstrated that discovery had not closed and that much remained to be done. CNA suggests that IFF's statement in the Missouri court that eighty-one depositions still needed to be taken was "merely a pretext for obtaining an adjournment" and further suggests that CNA might not have been allowed to conduct discovery after the Peoples' trial, but both claims are pure speculation. IFF has shown that the Missouri court left the discovery period open. CNA does not know what discovery it could have had because it did not try to take any. This does not amount to prejudice to CNA. *See Bradley Corp.*, 984 F. Supp. at 1203–04 ("What this Court would have decided at the time is now pure speculation . . . not evidence of actual prejudice.").

¶ 21. CNA's one specific claim of prejudice is that IFF failed, in its defense of the *Benavides* cases, to argue for the distinction between the butter flavoring supplied by Auro Tech and that supplied by BBA. CNA explains that the BBA flavoring at issue in the suit contains 10% diacetyl, which is the chemical implicated in causing harm to the factory workers. The flavoring supplied by Auro Tech (along with other manufactur-

ers) contains only 3% diacetyl, and CNA points out that the plaintiffs in *Benavides* based much of their case on the theory that it was the 10% diacetyl flavoring produced by BBA that injured them. Thus, CNA argues, had it been promptly notified of the case, it could have pursued a defense strategy of differentiating the 10% diacetyl from the 3% diacetyl and thus clearing Auro Tech of any liability.

¶ 22. But as IFF points out, Auro Tech no longer exists, having merged with IFF. Auro Tech thus has no interest in the case, and to the extent CNA has a responsibility in the case, that responsibility is to IFF. Had CNA joined in the defense of this case, it would be required to defend in IFF's best interest and not its own. *See Arana v. Koerner*, 735 S.W.2d 729, 733 (Mo. Ct. App. 1987) ("The obligations of an attorney to his client 'are in no way abridged by the fact that an insurer employs him to represent an insured.' ") (citation omitted), *overruled on other grounds, Klemme v. Best*, 941 S.W.2d 493 (Mo. 1997). IFF owns BBA in addition to Auro Tech and is liable for the 10% diacetyl flavoring both through its ownership of BBA and because it manufactured the flavoring itself after acquiring BBA. Thus, even if CNA had been in the suit from the beginning, it could not have argued in the underlying action that the 10% diacetyl flavoring, rather than the 3% diacetyl flavoring, was responsible for the workers' injuries, since this would be tantamount to arguing in favor of the plaintiffs and against IFF. For the same reason, it could not have joined other 3% diacetyl manufacturers in an attempt to spread the liability, as it asserts it had the "right" to do, since that would have resulted in bringing additional parties into the case who would likely have taken the position that the 10% diacetyl flavoring had harmed the plaintiffs. The place

for CNA to demonstrate this distinction is not in the underlying *Benavides* suits, but in this insurance coverage action.[3]

■

¶ 23.   And CNA is attempting to do exactly that. It devotes a great deal of its brief to arguing that even if we reject its late notice defense, we should nevertheless affirm the summary judgment on the ground that its insured, Auro Tech, did not make the butter flavoring that is at issue in the *Benavides* actions and the other suits. We can affirm a summary judgment on different grounds than those relied on by the trial court. *See Doe v. General Motors Acceptance Corp.*, 2001 WI App 199, ¶ 7, 247 Wis. 2d 564, 635 N.W.2d 7.

¶ 24.   But given the unusual procedural history of this case, we conclude that the alternative grounds proffered by CNA are not ripe for our review. As discussed above, the parties and court agreed to litigate this case in two phases. The first phase was for deciding

---

[3] While CNA only argued that it was given late notice of the *Benavides* cases, the circuit court's order precluded coverage for *all* butter flavor claims, including claims that IFF notified to CNA within weeks of their filing. It is plain that these claims were timely notified, and so we hold that the circuit court erred in declaring that CNA owed IFF no coverage for these cases. Prejudice is one of two elements required to deny coverage for late notice; the other is, of course, late notice itself. *See Bradley Corp. v. Zurich Insurance Co.*, 984 F. Supp. 1193, 1202 (E.D. Wis. 1997). CNA argues that IFF's notice of these later-filed cases *was* untimely because IFF had a duty to notify them of an "occurrence" as well as a "suit" under the policies. We need not address this argument, since we have already determined that the late notice did not prejudice CNA with respect to the *Benavides* suits; it is even clearer that CNA suffered no harm as a result of IFF's alleged failure to notify it of suits that had not yet begun.

only three issues: the existence and terms of policies between CNA and Auro Tech, whether IFF had succeeded to Auro Tech's rights under the policies, and whether IFF's late notice to CNA precluded coverage. The circuit court granted summary judgment during this first phase and, consequently, the basic questions of duty to defend and indemnify were never addressed by the lower court. IFF, relying on the phasing stipulation, did not brief these issues below. CNA did brief these issues both below and in this court, but we agree with IFF that CNA's briefing went beyond the agreed-on issues to be litigated in the first phase.[4]

---

[4] CNA argues that the question of whether the *Benavides* claims gave rise to coverage was properly within the first phase since one of the issues to be resolved there was "what are the terms and conditions of those policies, and did IFF succeed to the rights and obligations of Auro Tech Inc. under one or more of them?" CNA claims that identifying the terms of the policies and deciding whether the IFF-Auro Tech merger transferred rights to IFF would be a "hypothetical abstraction" unless the court also determined whether the *Benavides* cases triggered the policies' coverage. This would be, according to CNA, an "advisory opinion." *See Miller Brands-Milwaukee, Inc. v. Case*, 162 Wis. 2d 684, 694–97, 470 N.W.2d 290 (1991). We disagree; the content of the policies and IFF's succession to them by merger are separable issues from the content of the *Benavides* actions. To CNA's further argument that this reading of the agreement "contradicts the precise reasons that the parties entered into the stipulation in the first place," we can only answer that we give stipulations their plain meanings as drafted.

We might, in the interest of judicial economy, decide this case on the merits if it were crystal clear, as CNA claims, that Auro Tech's flavoring played no part in the plaintiffs' claims in the underlying cases. But IFF has pointed to portions of transcript in which plaintiffs' lawyers offered Auro Tech's flavoring as an alternative ground for IFF's liability.

¶ 25. Of the three questions to be answered in the first phase, only one remains: whether IFF succeeded to Auro Tech's rights under the policies as a result of the merger of the two companies. The circuit court did not rule on the issue and the parties have briefed it here in only a cursory way. We therefore remand this case in order to allow the parties to present the evidence and arguments necessary to decide this question. If the circuit court finds that IFF did succeed to Auro Tech's rights under the policies, it should move into the second phase of the inquiry.

*By the Court.*—Judgment reversed and cause remanded with directions.