HRUZ, J.[1]
¶1 Allen Schnepf appeals a judgment imposing civil forfeitures and injunctive relief after he was found liable for discharging fill material into a wetland without a certification of compliance with state water standards. On appeal, Schnepf argues summary judgment was improper for several reasons. Generally, he contends the State failed to establish a prima facie case for summary judgment; alternatively, he argues that his own submissions established a genuine dispute of material fact. We affirm.
BACKGROUND
¶2 In May 2009, Schnepf purchased property from Joseph Wojcik in the Town of Ogema. In April 2010, a Wisconsin Department of Natural Resources (DNR) conservation warden observed a dump truck haul soil onto a site located on that property. The truck was driven by Bryan Kennedy, a contractor hired by Schnepf. When questioned by the warden, Schnepf admitted that he was filling the site with soil and that he had not acquired a permit prior to any fill being placed. The DNR determined that the 0.82-acre site had been designated as part of a wetland and, after further investigation, that a significant amount of fill material covered wetland vegetation and soils on that wetland site. Schnepf and Kennedy were thus issued notices of violations. At a July 2010 enforcement conference, the DNR requested that Schnepf remove the fill and follow a wetland restoration plan recommended by Gary Starzinski, whom Schnepf had retained as an environmental consultant. Neither request had been fulfilled as of April 1, 2014.
¶3 The State subsequently filed a complaint alleging that Schnepf and Kennedy had filled waters of the state without DNR certification of compliance with state water quality standards, in violation of WIS. ADMIN. CODE § NR 299.03(1) (Apr. 2013).[2] Less than one month after the complaint was filed, Kennedy entered a stipulated judgment with the State in which he was assessed $3500 in forfeitures and fees. It appears from the appellate record that Kennedy's involvement with the proceedings ended at that point.
¶4 The State eventually moved for summary judgment against Schnepf. It argued, among other things, that Schnepf discharged fill material into the wetland site on his property. In support, the State submitted affidavits that included deposition testimony from Starzinski, Allen O'Leary (another consultant Schnepf had hired), and Schnepf. It also submitted affidavits from John Kleist (a DNR water resources management specialist), DNR warden Daniel Michaels, and Wojcik. These various individuals averred the following facts.
¶5 In his deposition, Schnepf stated he had bought the property with the intent to cultivate a garden on it. In late 2009, he began clearing underbrush, cutting the larger trees using chainsaws, and grinding and removing stumps. In doing so, he cleared approximately sixty trees. Schnepf also rototilled the wetland site's soil to a depth of four inches. Eventually, Schnepf realized the site "was not going to be a very good garden area" unless more topsoil was added. Schnepf then hired Kennedy in the early spring of 2010 to "level out" two small hills on his property into the wetland site, in addition to hauling in additional topsoil to fill it. Schnepf instructed Kennedy that he "wanted the garden area to be a foot thick of topsoil and 3 inches everywhere else," and Schnepf "left it in [Kennedy's] hands" to place the topsoil. Schnepf estimated that the hills-once they had been levelled into the wetland site-contained 200 to 350 cubic yards of soil, and Kennedy had invoiced Schnepf for hauling 1000 cubic yards of additional soil onto the site. Schnepf denied adding any gravel to the wetland site or knowing if anyone else had ever done so.
¶6 Warden Michaels questioned Wojcik about any fill activity on the property during the fifteen years Wojcik had owned it. Wojcik told Michaels that he placed topsoil on a portion of the property different than the wetland site when he added a culvert and driveway four years before selling the property to Schnepf. But Wojcik denied placing fill anywhere else on the property, including on the 0.82-acre site. Additionally, he denied clearing any trees on the property, except for "a few dead trees for campfire wood." Wojcik also was unaware if any other fill had been placed anywhere else on the property since his childhood, when his grandfather owned it.
¶7 After Jon Kleist inspected the site on April 27, 2010, he concluded that it was a wetland and that the wetland had not been filled before "Schnepf, or someone working for Schnepf, placed and spread fill material into the wetland." He averred that "topsoil is a fill material," fill material can consist of "rock, sand, soil, [or] clay," and the placement of such fill material "into a wetland constitutes a discharge into waters of the state." He observed differing layers of soil in two pits dug into the wetland site. In the first pit located "in the undisturbed wetland" on the site, Kleist observed "muck soil (wetland soil)" that "was saturated to the surface with water and the hole immediately filled in with water as it was dug." He discovered "sandy soil" in the second pit that "appeared to be recently placed filled material," was "un-compacted and very clean," and showed no signs of "plant roots." Kleist also observed wetland vegetation on the wetland site, as well as standing water and saturated fill along the north and west boundaries of the site's fill area. In addition to his on-site observations, Kleist noted the site had been recorded on the Wisconsin Wetland Inventory as a mapped wetland. After reviewing "air photos" of the site from the years 1939, 1955, 1978, 1994, 2008 and 2010, Kleist also determined "that the fill area was a wetland in the 2008 air photo and in all of the photos that pre-date 2008."
¶8 Allen O'Leary investigated the wetland site in August 2010. After the excavation of three pits, he discovered wetland vegetation at depths of forty-eight, thirty-two, and twenty-four inches below the surface. This vegetation had grown within what O'Leary stated was wetland soil, while a layer of "soil that was obviously fill" rested on top of that soil. O'Leary stated that the wetland site's "fill material" at that time "seemed like it didn't have anything growing on it, so it hadn't been there real long." O'Leary believed the fill material "could have been there a year" beforehand due to the condition of the buried vegetation, but he expressed uncertainty about the exact time at which the fill had been added to the wetland site.
¶9 Gary Starzinski performed a wetland delineation and soil test of the wetland site in May 2013. He identified three distinct layers of soil within five pits that had been dug into the wetland site. The lowest layer was composed of a mucky type of native, hydric soil with high organic matter content that is commonly found in wetland systems. Starzinski noted that native vegetation-some of which he opined was still living-had grown in the muck and could "rebound" if the higher soil layers were removed. The middle layer was composed of thirty inches of "gravelly sandy loam" (GSL) that Starzinski determined was not native to the site. The highest layer consisted of twelve inches of topsoil, which was also not native to the site. In one pit, Starzinski also discovered that the topsoil directly overlaid the natural wetland soil without an intervening layer of GSL.
¶10 Starzinski opined that the topsoil constituted fill material and that the GSL had been "brought in recently." He estimated that the GSL had been placed on the wetland site about five years before his May 2013 investigation, but he said he could not precisely distinguish whether placement first occurred "five years, eight years or two years" before 2013. Starzinski did not find signs of wood chips, other vegetation, or any root systems that were present within the GSL layer. Based on his findings, Starzinski opined, in his "best professional judgment," that the site was a filled wetland.
¶11 In opposing the State's motion, Schnepf primarily argued there was a genuine dispute of whether the site was still a "wetland," as defined in WIS. STAT. § 23.32(1), at the time he placed the topsoil. His theory in this regard was nuanced. Schnepf argued that while he did place the topsoil on the wetland site, he did not place the GSL. Schnepf then pointed to two interrogatory responses from the State. Responding to Schnepf's fourth interrogatory, the State answered, in part, that the GSL was "neither a wetland soil nor a soil indicative of wetland conditions." Responding to Schnepf's fifth interrogatory, the State answered, in part, that it did not contend "that previous to the deposit of loamy topsoil on the Site, water was at, near or above the land surface long enough to be capable of supporting" wetland vegetation where topsoil overlaid GSL. In his affidavit, Schnepf "readily admitted" he had directed Kennedy to place topsoil on the site, but he denied ever "haul[ing] or ask[ing] anyone else to haul ... fill material (not the topsoil)" on it. As such, Schnepf was distinguishing between the topsoil and the GSL found on the wetland site.
¶12 Schnepf also averred that, based upon the 0.82-acre site's appearance, at no point did he believe it was a wetland. As part of his argument, Schnepf also cited O'Leary's uncertainty about how recently the fill material was introduced to the wetland site, as well as Starzinski's statement that the "site had been a wetland system prior to the fill." In essence, Schnepf argued that the State had failed to show he placed the GSL on the wetland site, and that the site was no longer a wetland after someone else had placed the GSL. Therefore, Schnepf argued, he did not "fill" a wetland at the time he (via Kennedy) added topsoil to the 0.82-acre site.
¶13 The circuit court granted summary judgment. In its oral decision, the court noted that the summary judgment materials showed GSL was placed on the wetland site at some point between 2008 and April 2010, and that Schnepf placed topsoil fill directly on wetland soil along the site's edges. From there, the court framed the central dispute as whether Schnepf or Wojcik had placed the GSL layer on the 0.82-acre site's remaining portions.
¶14 The circuit court determined that "the undisputed physical evidence d[id] not permit a conclusion that Wojcik placed the fill," and "no rational trier of fact could find [Schnepf's] claim [that he did not place the GSL] plausible" in light of that same evidence. The court cited Starzinski's and O'Leary's testimonies that the GSL layer did not contain any vegetation or woodchips and that no roots or vegetation had grown in the GSL, despite Schnepf's claims of there being numerous trees or heavy brush on the site when he cleared and rototilled it. Meanwhile, there was substantial living wetland vegetation remaining under the layer of GSL. The court then concluded the "only possible explanation" was that Schnepf had filled the wetland site with GSL only after he had cleared and rototilled the property in late 2009.
¶15 Almost a year after the circuit court's summary judgment decision,[3] but before a final judgment or order had been entered, Schnepf filed a motion for relief from the judgment on the grounds of newly discovered evidence. Schnepf claimed to have discovered two stumps buried under the topsoil but on top of the GSL. In support, he attached to his motion affidavits from three individuals. In general, the individuals averred that the stumps appeared to have grown within the GSL on the wetland site for a considerable amount of time.
¶16 The circuit court denied Schnepf's motion. In a letter to the parties, the court determined that reopening the summary judgment was not appropriate because Schnepf's proffered materials could have been discovered earlier through reasonable diligence. See WIS. STAT. § 806.07(1)(b). The court further concluded that Schnepf's "stump" evidence failed to establish a disputed issue of material fact in light of the court's previous conclusion on the placement of the GSL fill because of all the other physical evidence and expert testimony.
¶17 Subsequently, the parties disputed the appropriate remedies for Schnepf's liability. After significant briefing and two hearings, the circuit court entered a final judgment against Schnepf. Pursuant to the judgment, Schnepf was ordered to forfeit $37,009.80 for his ongoing violation and, as injunctive relief, to remove all fill and restore the wetland pursuant to a restoration plan proposed by Starzinski.[4] On appeal, Schnepf contends the circuit court's grant of summary judgment on his liability was improper.
DISCUSSION
¶18 We review a grant of summary judgment independently, using the same methodology as the circuit court. PNC Bank, N.A. v. Bierbrauer , 2013 WI App 11, ¶ 9, 346 Wis. 2d 1, 827 N.W.2d 124 (2012). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We begin by examining the submissions of the moving party to determine whether they sufficiently establish a prima facie case for summary judgment. Bierbrauer , 346 Wis. 2d 1, ¶ 9. If they do, we then turn to the opposing party's submissions to determine whether they show material facts are in dispute such that the opposing party is entitled to a trial. Id.
¶19 The purpose of summary judgment is to avoid trials when there is nothing to try. Tews v. NHI, LLC , 2010 WI 137, ¶ 42, 330 Wis. 2d 389, 793 N.W.2d 860. Courts do not decide issues of fact on summary judgment; rather, they only decide whether genuine issues of fact exist. Id. ; Oddsen v. Henry , 2016 WI App 30, ¶ 25, 368 Wis. 2d 318, 878 N.W.2d 720. A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Schmidt v. Northern States Power Co. , 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294. Summary judgment should not be granted if differing reasonable inferences can be drawn from the undisputed facts. Tews , 330 Wis. 2d 389, ¶ 42. All favorable facts and all reasonable inferences must be construed in the nonmoving party's favor. Oddsen , 368 Wis. 2d 318, ¶ 26.
¶20 The State asserts that Schnepf violated WIS. ADMIN. CODE § NR 299.03(1) (Apr. 2013), which provides, in relevant part: "No person may conduct any activity which may result in any discharge into the waters of the state unless the person has received a certification or waiver under this chapter."[5] The parties agree that Schnepf never obtained a certification or waiver for any discharge and that he did not rectify a violation-i.e., restore the wetland-after being charged. It is also undisputed, based upon Schnepf's own deposition testimony, that he (through his agent, Kennedy) placed a significant amount of topsoil on the 0.82-acre wetland site located on Schnepf's property. Thus, the dispositive issue before us is whether a disputed issue of fact exists as to whether Schnepf "conduct[ed] any activity which may result in any discharge into the waters of the state." Id. To that end, the State contends Schnepf's undisputed placement of the topsoil layer on the pre-existing wetland establishes Schnepf's liability as a matter of law.
¶21 We agree. Schnepf disregards the State's unrefuted evidence that he placed significant amounts of topsoil directly on a designated wetland. Schnepf admitted that he, through Kennedy, leveled two hills containing about 200 to 350 cubic yards of soil and hauled approximately 1000 cubic yards of additional topsoil onto the wetland site, and the parties do not dispute that topsoil is considered fill material. Furthermore, and critically, Schnepf does not dispute Kleist's and Starzinski's findings that topsoil was directly present above certain wetland soils (with no intervening GSL layer), in addition to there being standing water on the wetland site's north and west edges. These undisputed facts demonstrate that Schnepf conducted an activity that resulted in discharge into waters of the state in violation of WIS. ADMIN. CODE § NR 299.03(1) (Apr. 2013). Because the State has undisputedly established that Schnepf placed topsoil fill directly on wetland soil in a designated wetland, we conclude the State is entitled to summary judgment.
¶22 Schnepf's only response to this evidence is to summarily assert-in his reply brief-that the circuit court erred in granting summary judgment as to liability for the entire wetland site, as opposed to just those portions on which he directly placed topsoil over wetlands. Yet, Schnepf fails to elaborate why the State needed to prove he had definitively filled the entire wetland site located on his property in order for him to have violated WIS. ADMIN. CODE § NR 299.03(1) (Apr. 2013). This omission is especially noteworthy given there is no evidence that anyone ever lawfully placed the GSL layer on the wetland site, and there is similarly no evidence that the site was not a wetland as of 2008.
¶23 In any event, if Schnepf was shown to have deposited any topsoil directly into the wetland, then that deposit would constitute "any activity" resulting in "any discharge" under WIS. ADMIN. CODE § NR 299.03(1) (Apr. 2013). Schnepf has admitted he did so. Schnepf has not directed us to anything in the statutes, regulations, case law or any other authority to cause us to doubt that his liability-even viewing the facts of this case in the light most favorable to him-should extend to the entire 0.82-acre wetland site located on his property. Accordingly, we must deem Schnepf to have abandoned any such argument. See Kraft v. Steinhafel , 2015 WI App 62, ¶ 7 n.3, 364 Wis. 2d 672, 869 N.W.2d 506. Because of the foregoing, including the fact that Schnepf has not developed any legal argument on appeal disputing the remedies imposed for his liability, we affirm the circuit court's grant of summary judgment, albeit on narrower grounds.
¶24 While the foregoing alone disposes of Schnepf's case, we will briefly address a few other arguments that Schnepf raises. None of these arguments make the grant of summary judgment against him erroneous on the basis that we have applied.
¶25 First, Schnepf again contends that the 0.82-acre site on his property was not a "wetland," or, in the alternative, at least not at the time when he deposited any fill. WISCONSIN STAT. § 23.32(1) defines "wetland" as "area where water is at, near, or above the land surface long enough to be capable of supporting aquatic or hydrophytic vegetation and which has soils indicative of wet conditions." Schnepf argues that the site ceased being a "wetland" before the time he undisputedly placed the topsoil on it because the GSL layer was already present. In particular, he asserts that water was not shown to be "at, near, or above" the surface when fill was discovered on the wetland site, citing the State's interrogatory responses for evidentiary support.
¶26 We initially question Schnepf's unsupported legal premise that a designated wetland area stops being a wetland after having been unlawfully filled (regardless of by whom). In any event, and without getting into the merits of the dispute over who placed the GSL, it is sufficient to note that Schnepf's argument on the "not a wetland" issue lacks any factual support, even from his own submissions. All three experts, including Schnepf's own, averred that wetland soils remained buried beneath the GSL and topsoil on the site. Starzinski noted that native vegetation-some of which he opined was still living-had grown in the muck and could "rebound" if the higher soil layers were removed. Moreover, Schnepf submitted no evidence calling into question Kleist's observations of standing water on the wetland site's edges in areas where there was no GSL, and of water welling to the surface in one of the on-site pits.
¶27 Additionally, Schnepf's reliance on the State's interrogatory responses is inappropriate. The State never conceded the 0.82-acre site was not part of a wetland, as Schnepf apparently implies. It simply clarified that GSL was not a wetland soil and that water did not exist at the GSL's surface because it had already been filled over the wetland.[6] In sum, Schnepf has not demonstrated any genuine issue of material fact regarding whether the site was, or even remained, a wetland.
¶28 Second, Schnepf takes issue with the circuit court's conclusion that his denial of placing the GSL fill was "implausible." Most notably, he cites the affidavits attached to his motion for relief from summary judgment as establishing that stumps of aged trees were discovered to be imbedded in the GSL layer. But Schnepf incorrectly assumes this evidence is properly before this court. He does not develop an argument, much less cite the controlling legal standards, regarding the circuit court's discretionary decision to not reopen the summary judgment pursuant to WIS. STAT. § 806.07(1)(b). See Connor v. Connor , 2001 WI 49, ¶¶ 27, 39, 243 Wis. 2d 279, 627 N.W.2d 182 (a court's decision on a motion to reopen a judgment due to newly discovered evidence is reviewed for an erroneous exercise of discretion). Moreover, as the State observes, Schnepf did not state in his notice of appeal that he was appealing the court's denial of his motion to reopen the summary judgment. Schnepf has abandoned any challenge to the court's determination that he did not exercise reasonable diligence in presenting such evidence sooner. See Munger v. Seehafer , 2016 WI App 89, ¶ 42, 372 Wis. 2d 749, 890 N.W.2d 22. Because Schnepf's "stumps" affidavits were not properly before the circuit court or before this court now, they cannot establish a genuine factual dispute for summary judgment purposes.
¶29 Third and finally, Schnepf contends the circuit court improperly weighed Wojcik's credibility more favorably than his own when it granted summary judgment. "[C]redibility determinations are reserved for the fact finder and are not appropriate for summary judgment." Kraft , 364 Wis. 2d 672, ¶ 18. However, that principle does not rescue Schnepf here. Our de novo review permits us to affirm summary judgment on different grounds than those relied on by the circuit court. See International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶ 23, 304 Wis. 2d 732, 738 N.W.2d 159. We have done so, at least in part. Our conclusion is not based on any conflicting statements between Wojcik and Schnepf. Thus, any allegedly improper credibility determinations the circuit court made are immaterial to our decision.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(g) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The complaint also charged Schnepf with maintaining a public nuisance in violation of Wis. Stat. § 299.95. For simplicity's sake, we refer to Schnepf's violations as solely pertaining to Wis. Admin. Code § NR 299.03(1) (Apr. 2013). As the State notes, the charged nuisance violation pursuant to § 299.95 was "wholly derivative" of Schnepf's charged violation of § NR 299.03(1).

The parties do not explain why a delay in the proceedings occurred, and the record is similarly unclear.

Schnepf's wetland fill violation had been ongoing for 2509 days by the time of the final forfeiture hearing, and he was assessed $10 per day for the ongoing violation pursuant to Wis . Stat. § 281.98(1). The remaining forfeiture amount consisted of various statutory costs and surcharges.

The DNR has promulgated Wis. Admin. Code ch. NR 299, as well as Wis. Admin. Code ch. NR 103, pursuant to Wis. Stat. §§ 281.11, 281.12(1), and 281.15. It is undisputed for our purposes that "wetlands" constitute "waters of the state," which Wis. Stat. § 281.01(18) defines as including "all lakes, bays, rivers, streams, springs, ponds, wells, impounding reservoirs, marshes, watercourses, drainage systems and other surface water or groundwater, natural or artificial, public or private, within this state."

The State's response to Schnepf's fifth interrogatory is unmistakably clear. Schnepf submitted, "Is it the contention of the Plaintiff that previous to the deposit of loamy topsoil on the Site water was at, near, or above the land surface long enough to be capable of supporting aquatic or hydrophytic vegetation?" To this query, the State responded beyond Schnepf's cited portion, see supra ¶ 11, with:
[I]t is the contention of the State of Wisconsin that previous to the deposit of loamy topsoil on the site AND previous to the deposit of [GSL] soils on the Site water was at, near, or above the land surface long enough to be capable of supporting aquatic or hydrophytic vegetation.
In general, the State of Wisconsin contends that an area of filled wetland exists on the Site , and that the filled area of the Site was a wetland prior to site disturbance and placement of fill materials on the Site by Schnepf or others acting for Schnepf.
(Emphasis added.)