PER CURIAM.
¶1 Jason Baars appeals a summary judgment granted in favor of James Weber. The circuit court concluded Weber was entitled to summary judgment because the undisputed facts established that Baars breached the parties' contract and, under the circumstances, the contract was void. We agree with the circuit court that the undisputed facts establish that Baars breached the contract. We reject Baars' contention that the court erred in determining time was of the essence with respect to the performance of his contractual obligations. We also agree with the circuit court's determination that, in light of Baars' breach, the parties' contract is void. We therefore affirm.
BACKGROUND
¶2 Baars and Weber owned neighboring properties in the Town of Rib Mountain. Primrose Lane-a north-south road-formed the western border of both properties. Baars' lot was north of Weber's property, and the two lots were separated by Marigold Road, which ran east-west.
¶3 On June 16, 2009, Baars and Weber entered into a "Real Estate Transaction Agreement" (hereinafter, "RETA"). The RETA provided that, in exchange for $18,500, Baars would "vacate the extension of Marigold [Road] and create a road dedication of the extension of Red Maple [Road]," running along the northern border of Baars' property, "as shown on the attached CSM survey map (attachment #1)."[1] Attachment #1 was a CSM created in 2003 by surveyor Timothy Vreeland, which had been altered with handwritten additions. Specifically, someone had shaded in the portion of Marigold Road between Baars' and Weber's properties and added the handwritten notation "Vacate Marigold." Someone had also shaded in a portion of the area originally designated "FUTURE R-O-W OF RED MAPLE ROAD" and added the handwritten notation "Dedicate Red Maple."
¶4 The RETA specified that Weber would "obtain a total of .626 acres of the vacated Marigold road. (See attachment #2 for reference of the parcel to obtain)." Attachment #2 was a hand-drawn map showing the dimensions of the vacated portion of Marigold Road, as well as the portion of Baars' property that would be dedicated for Red Maple Road. Attachment #2 showed that the vacated portion of Marigold Road was to be divided into two unequal parts, the larger of which was comprised of .626 acres. It contained the notation "James Weber to obtain .626 acres of vacated Marigold." Weber asserts, and Baars does not dispute, that absent the RETA, each party would have been entitled to an equal portion of the vacated property. See WIS. STAT. § 66.1005(1) (2015-16).[2] Thus, by operation of the RETA, Weber was entitled to approximately .227 acres more property than he would have acquired under § 66.1005(1).
¶5 The RETA required Weber to pay Baars $9250 at the time of signing and to pay the remaining $9250 "upon completion of the Final CSM." The RETA defined "completion" as "the CSM approved by the Town of Rib Mountain and recorded with Marathon County." In addition to the payments discussed above, Weber was also responsible for paying "total expenditures of the project of $2,500." Any expenditures above that amount would be "split 50% between Baars and Weber."
¶6 The RETA set forth two circumstances in which the parties' agreement would be void. First, it stated: "If [the] Town of Rib Mountain Board does not allow this transaction to occur (without objection or influence from Baars or Weber), this agreement will be voided and the funds will be returned to Weber and any costs incurred to date will be split 50% between Baars and Weber." Second, the RETA stated the agreement would be void if any additional costs to proceed, beyond the $2500 to be paid by Weber, exceeded $3000.
¶7 It appears undisputed that, over the next several years, little or no progress was made toward obtaining the final CSM required by the RETA or securing the Town of Rib Mountain's approval of that CSM. Consequently, on June 5, 2015, the parties entered into a "Forebearance [sic] Agreement" (hereinafter, "Forbearance Agreement"), the stated purpose of which was "to toll the Statute of Limitations until December 31, 2015 to allow the parties to complete the terms of this Forebearance [sic] Agreement and [the RETA]." The RETA was attached to the Forbearance Agreement and was "incorporated" therein. The Forbearance Agreement described the purpose of the RETA as to "vacat[e] an extension of Marigold Road and creat[e] a road dedication of the extension of Red Maple Road ... all as described in the Certified Survey Map dated September 30, 2003 and prepared by Timothy Vreeland."
¶8 The Forbearance Agreement acknowledged that Weber had already paid Baars the first $9250 required by the RETA. It required Weber to pay an additional $10,470 into Baars' attorney's trust account-comprised of the second $9250 payment required by the RETA, and $1220 "for expenditures incurred in completing this Agreement." The second $9250 payment would be released to Baars "[u]pon finalization and completion of [the RETA]." The parties agreed that the RETA would be "deemed complete when the Town Board of Rib Mountain approves the CSM of Tim Vreeland referenced above and it is recorded with the Register of Deeds for Marathon County, Wisconsin."
¶9 Vreeland prepared an updated CSM in September 2015. However, the 2015 CSM divided the vacated portion of Marigold Road equally between Baars and Weber. As a result, it did not grant Weber .626 acres of the vacated land as contemplated by the RETA. The Rib Mountain Town Board approved the 2015 CSM on November 12, 2015, and it was recorded five days later. On December 17, 2015, Baars sold his property-as shown on the 2015 CSM-to Joshua and Jennifer Graf. Thus, the Grafs received half of the vacated portion of Marigold Road. Baars therefore conveyed to the Grafs approximately .227 acres of property that should have been conveyed to Weber, pursuant to the RETA.
¶10 Baars filed the instant lawsuit against Weber in April 2016, seeking disbursement of the funds Weber had deposited into Baars' former attorney's trust account. Baars also sought a money judgment against Weber in the amount of $7751.30 for Baars' expenses "associated with this real estate transaction." Weber answered Baars' complaint and asserted a counterclaim for breach of contract. He alleged Baars had breached the Forbearance Agreement by "failing to provide a Certified Survey Map approved by the Town Board of Rib Mountain by which [Weber] could obtain .626 acres of the vacated Marigold Road."
¶11 Baars ultimately moved for summary judgment, arguing the undisputed facts showed that he had satisfied his obligations under the Forbearance Agreement because "the [2015] CSM was approved by the Town of Rib Mountain and recorded in the Office of the Register of Deeds for Marathon County." Baars therefore asserted he owed "no remaining legal obligations" to Weber and was "entitled to a release of the escrowed funds." He contended the additional .227 acres of land to which Weber was entitled under the RETA were not "material to the deal." Accordingly, he argued Weber could, at best, "make a claim for restitution" with respect to the value of that property, which could then be offset against Baars' recovery.
¶12 The circuit court disagreed. It observed that, under the plain language of the Forbearance Agreement, Baars was only entitled to release of the funds held in trust upon "completion" of the terms of the RETA. The court concluded the RETA would be deemed complete under the Forbearance Agreement when the 2003 CSM attached to the RETA was approved by the Town of Rib Mountain. The court noted it was undisputed that the 2003 CSM had never been approved by the Town, and it rejected Baars' argument that the approval and recording of the 2015 CSM satisfied the Forbearance Agreement. The court therefore denied Baars' summary judgment motion, and it subsequently denied his motion for reconsideration of that decision.
¶13 Weber then moved for summary judgment, arguing the RETA was void because Baars had failed to fulfill his contractual obligations within the time limit set forth in the Forbearance Agreement-i.e., by December 31, 2015. The circuit court agreed and granted summary judgment in favor of Weber. The court rejected Baars' argument that he should not be held to the December 31, 2015 deadline because time was not of the essence of the parties' contract. The court further concluded that, under the RETA's unambiguous terms, the remedy for Baars' breach was "the voiding of the agreement and return of purchase funds to Weber." The court therefore dismissed Baars' claim against Weber, ordered Baars to refund Weber's initial payment of $9250, and ordered the $10,470 held in Baars' former attorney's trust account returned to Weber. Baars now appeals.
DISCUSSION
¶14 We independently review a grant of summary judgment, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). Here, Baars argues that, in granting Weber summary judgment, the circuit court erroneously interpreted the parties' contract. The interpretation of an unambiguous contract presents a question of law for our independent review. Town Bank v. City Real Estate Dev., LLC , 2010 WI 134, ¶32, 330 Wis. 2d 340, 793 N.W.2d 476.
¶15 It is undisputed that the parties' agreement in this case was set forth in the RETA and the Forbearance Agreement. The RETA expressly required Baars to "vacate the extension of Marigold and create a road dedication of the extension of Red Maple ... as shown on the attached CSM survey map"-i.e., the 2003 CSM that had been augmented with handwritten notations. The RETA also expressly provided that Weber was to obtain "a total of .626 acres of the vacated Marigold road." In addition, the RETA referenced an attached, hand-drawn map, which showed the unequal division of the vacated property and specifically stated Weber was "to obtain .626 acres of vacated Marigold." These provisions unambiguously demonstrate that the parties intended an unequal division of the vacated property, with Weber receiving .626 acres.
¶16 The RETA also referred to the preparation of a "Final CSM survey map." This language indicates that the parties intended to have a new CSM prepared that would incorporate their intended unequal division of the vacated property. The RETA also unambiguously provided that the CSM would be deemed completed when "approved by the Town of Rib Mountain and recorded with Marathon County." The Forbearance Agreement, in turn, incorporated the RETA's terms. In addition, it reiterated that the RETA would be deemed complete when the CSM required by the RETA was approved by the Town of Rib Mountain and recorded with the Marathon County Register of Deeds.[3] Finally, the Forbearance Agreement unambiguously required that these tasks be completed by December 31, 2015.
¶17 Based on the unambiguous language of the RETA and the Forbearance Agreement, it is clear Baars was required-by December 31, 2015-to obtain town approval of a CSM that granted .626 acres of the vacated portion of Marigold Road to Weber and to have that CSM recorded with the county. It is undisputed that Baars did not do so. Although he obtained town approval of the 2015 CSM on November 12, 2015, and recorded that document five days later, it is undisputed that the 2015 CSM did not grant Weber .626 acres of the vacated Marigold Road. Accordingly, the undisputed facts show that Baars failed to timely fulfill his obligations under the RETA and the Forbearance Agreement. We therefore conclude, as a matter of law, that Baars breached the parties' contract.
¶18 In arguing that Weber was not entitled to summary judgment, Baars latches onto the circuit court's statement that the RETA required him to obtain town approval of "the 2003 Vreeland CSM." Baars asserts the hand-altered 2003 CSM that was attached to the RETA was not recordable and therefore could not have been the document the parties intended Baars to obtain approval of and record. While we question whether Baars properly interprets the circuit court's statement, as noted above, we independently review a grant of summary judgment. See Hardy , 306 Wis. 2d 513, ¶6. We may therefore affirm on grounds that are different from those relied upon by the circuit court. International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶23, 304 Wis. 2d 732, 738 N.W.2d 159. Here, we conclude the undisputed facts show that Weber was entitled to summary judgment because: (1) the RETA and the Forbearance Agreement required Baars to obtain town approval of a CSM granting .626 acres of the vacated portion of Marigold Road to Weber and to have that CSM recorded with the county by December 31, 2015; and (2) Baars failed to do so. Baars' claim that the circuit court erred in interpreting the contract to require him to obtain town approval of the 2003 CSM is therefore immaterial.
¶19 Baars next argues the circuit court erred by concluding time was of the essence with respect to the performance of his contractual obligations. He therefore contends he was not required to fulfill those obligations by December 31, 2015. He further contends that he satisfied the terms of the RETA in November 2017 by obtaining town approval of and recording a CSM that incorporated an unequal division of the vacated portion of Marigold Road.
¶20 Whether time is of the essence of a contract is a question of fact. Employers Ins. of Wausau v. Jackson , 190 Wis. 2d 597, 616, 527 N.W.2d 681 (1995). A circuit court may not find facts on summary judgment. See State Bank of La Crosse v. Elsen , 128 Wis. 2d 508, 511, 383 N.W.2d 916 (Ct. App. 1986). However, where the record evidence permits only one reasonable conclusion, a question of fact may be answered by the court on summary judgment as a matter of law. See Groom v. Professionals Ins. Co. , 179 Wis. 2d 241, 249, 507 N.W.2d 121 (Ct. App. 1993).
¶21 Time is not of the essence of a contract unless it is clear the parties intended to make it so. Appleton State Bank v. Lee , 33 Wis. 2d 690, 693, 148 N.W.2d 1 (1967). Moreover, "[t]ime will not be regarded as of the essence of the contract merely because a definite time for performance is stated therein, without any further provision as to the effect of nonperformance at the time stated." Buntrock v. Hoffman , 178 Wis. 5, 13, 189 N.W. 572 (1922). In the absence of "express language" making time of the essence, it is often necessary to consider "the surrounding facts and circumstances, the situation of the parties, and the acts of the parties with respect to the subject matter." Id.
¶22 Here, the circuit court correctly determined, as a matter of law, that time was of the essence of the parties' contract. Although neither the RETA nor the Forbearance Agreement contained any language expressly stating time was of the essence, the surrounding facts and circumstances clearly demonstrate that was the parties' intent. The RETA did not contain any time limit within which Baars was required to obtain approval of and record the CSM. It is undisputed that, over the next six years, little or no progress was made toward completing those tasks. The parties then executed the Forbearance Agreement, which expressly stated it was entered into "to toll the Statute of Limitations until December 31, 2015 to allow the parties to complete the terms of this Forebearance [sic] Agreement and [the RETA]," and required Baars to perform his contractual obligations under the RETA by that date. The lack of a time limit to complete the parties' initial agreement, followed by their subsequent decision to revise that agreement and impose a time limit, permits only one reasonable inference-that the parties intended to make time of the essence when they executed the Forbearance Agreement. We therefore reject Baars' argument that the circuit court erred by determining time was of the essence.
¶23 Moreover, even if we agreed with Baars that time was not of the essence, there is no evidence in the record indicating that Baars owned the disputed .227 acres that he had sold to the Grafs at the time he recorded the 2017 CSM. Thus, the recording of the 2017 CSM, even if considered timely, did not result in Weber receiving the property promised to him under the RETA. Although Baars cites an April 2017 letter in which his attorney stated the Grafs had agreed to sign a quitclaim deed conveying the disputed property to Weber, there is no evidence in the record that the Grafs ever did so. In fact, the record contains evidence indicating that, as of December 15, 2017, the Grafs still owned the disputed property. Consequently, even if Baars' recording of the 2017 CSM could be considered timely, it did not fulfill Baars' obligations under the RETA.
¶24 Finally, Baars argues the circuit court erred by determining that the parties' contract was void, by its own terms, and therefore ordering that the amounts Weber paid under the contract be returned to him. Baars argues the RETA lists only two circumstances in which the parties' agreement will be deemed void, and neither of those circumstances have actually taken place.
¶25 We disagree. As noted above, the RETA expressly states: "If [the] Town of Rib Mountain Board does not allow this transaction to occur (without objection or influence by Baars or Weber), this agreement will be voided and the funds will be returned to Weber." That is precisely what happened here. The Rib Mountain Town Board did not, within the time limit set forth in the Forbearance Agreement, allow the transaction contemplated by the RETA to occur. In other words, by December 31, 2015, the Rib Mountain Town Board had not allowed a transaction to occur by which Weber would receive .626 acres of the vacated portion of Marigold Road. Baars does not argue that the Town Board's failure to allow the transaction to occur was the result of any objection or influence by himself or Weber. Under these circumstances, the RETA is clearly void, pursuant to its own unambiguous language.
¶26 Baars argues the RETA is not void under the above-quoted provision because the Rib Mountain Town Board "did not impede the transaction, having approved both the 2015 CSM and the 2017 CSM." He asserts the quoted language "is contingent on action of the Town of Rib Mountain to reject or negate the intention of the parties," and the Town Board has not taken any action "to negate, repudiate, or otherwise obstruct the transaction." This argument, however, is at odds with the plain language of the RETA. The RETA does not state the parties' agreement will be void if the Town Board negates, repudiates, or obstructs the parties' transaction; it states the agreement will be void if the Town Board "does not allow" the transaction to occur. As discussed above, the undisputed facts show that the Town Board did not allow the transaction contemplated by the RETA to occur before the December 31, 2015 deadline set forth in the Forbearance Agreement.
¶27 We therefore agree with the circuit court that the RETA is void, pursuant to its own unambiguous terms. We further agree with the court that, under these circumstances, the RETA plainly requires the return to Weber of the amounts he paid under the contract. Accordingly, the court properly ordered the return of Weber's initial $9250 payment and of the $10,470 held in Baars' former attorney's trust account.[4]
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The term "CSM" stands for certified survey map.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The Forbearance Agreement referred to the approval and recording of the 2003 CSM. However, based on the plain language of the RETA, which was incorporated into the Forbearance Agreement, it is clear the parties intended to require the approval and recording of a new CSM that incorporated: (1) the handwritten changes shown on the copy of the 2003 CSM that was attached to the RETA; and (2) the unequal division of Marigold Road shown on Attachment #2 to the RETA.

Baars also argues that, absent a contractual provision rendering the RETA void, rescission of the parties' contract was not an appropriate remedy because Baars' breach was not so serious as to destroy the contract's essential purpose. Because we conclude the RETA is void under its own unambiguous language, we need not address this argument. See Turner v. Taylor , 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716.